JOSEPH C. SCANDROLI, Ex'r of the Estate of Raymond J. Scandroli, Deceased, Plaintiff-Appellant, *v.* THE CITY OF ROCKFORD, Defendant-Appellee.— (MICHAEL K. MEYERS *et al.*, Intervening Defendants-Appellees.)

Second District   No. 79-284

Opinion filed July 25, 1980.

Charles F. Thomas, of Thomas, Thomas & Keeling, of Rockford, for appellant.

A. Curtis Washburn, Dennis L. Leahy, and John M. Boreen, all of Rockford, for appellees.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

The estate of Raymond J. Scandroli, deceased, is the owner of vacant real estate located at 1018 North Ridgewood Road in Rockford, and it is this realty which is the subject matter of this cause. The real estate in question, which consists of two corner lots located at the intersection of Cosper Avenue and Ridgewood Road, is zoned single-family residential (R-1). It is bounded on the north, west and east by streets (Cosper Avenue, Cosper Court and Ridgewood Road, respectively) and on the south by residential property, zoned R-1, which is owned by the plaintiff and includes his home. The neighborhood to the east and across the street from Ridgewood Road is zoned R-1 and consists of a large area of single-family residences. To the north and east across Cosper Avenue exists an area which is zoned and developed as multi-family residential (R-3). Situated to the west of and immediately adjacent to this multifamily zoning is an area which is classified and improved as commercial property (CC). Across Cosper Court and to the west of the subject lots lies property, also owned by the Scandroli estate, which is zoned R-3; to the west and south of the corner lots is situated property zoned for use as two-family residential (R-2).

On November 28, 1977, the plaintiff filed an application with the Rockford zoning office requesting both a zoning map amendment from R-1 to R-3 and a rear setback variance from 25 feet to 21 feet for construction of a six-unit townhouse apartment building at 1018 North Ridgewood Road. The zoning board of appeals voted to deny the plaintiff's combined application. On May 1, 1978, the Rockford city council twice voted in favor of granting the dual zoning relief sought, by simple majority votes of 12 to 9 and 11 to 9. Section 1508.2 of the Rockford zoning ordinance, as amended, requires a two-thirds affirmative vote by the aldermen before any combined application, each item of which has not received a recommendation for approval from the zoning board of appeals, can be granted or approved by the city council. Since the requisite two-thirds majority was not attained, the plaintiff's application was denied.

Subsequently, the plaintiff filed a five-count complaint for declaratory judgment and injunctive relief against the city of Rockford. Certain property owners in the Ridgewood Road area were granted leave to

intervene as defendants. The city of Rockford and the intervening defendants filed separate motions to dismiss counts II through V of the complaint. These motions requested that the counts be stricken because they (1) were substantially insufficient in law; (2) failed to allege any facts but rather pleaded legal conclusions; and (3) failed to state a cause of action. The court granted the motions of the defendant city and the intervenors and dismissed counts II, III and IV. Upon the plaintiff's motion, count V of the complaint was withdrawn and also dismissed. After a trial without a jury, the trial court denied the plaintiff's prayer for a declaratory judgment on count I of the complaint. On appeal, the plaintiff raises as error the trial court's dismissal of counts III and IV of the complaint and the court's decision in favor of defendants with respect to count I.

Count III of the plaintiff's complaint alleged that section 1508 of the city's zoning ordinance, which requires a two-thirds affirmative vote on combined applications for zoning relief, is unconstitutional on its face because it is arbitrary and capricious and without reasonable relationship to the public health, safety or welfare and is violative of the Federal and State constitutional due process guarantees. In count IV the plaintiff raised the same *per se* constitutional objections to section 301 of the zoning ordinance. This section of the ordinance, as amended, states that, in those cases involving corner lots, "the front of the lot shall be that dimension measured along the street which is the least."

■■ Once a legislative body determines there is a need for legislation to protect and promote the general welfare of its citizens, there is a presumption that the legislative enactment is a valid exercise of the police power. (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453; *Union Cemetery Association v. Cooper* (1953), 414 Ill. 23, 32.) When the validity of a zoning ordinance is questioned, if any state of facts reasonably can be conceived which would sustain it, there is a presumption of the existence of that state of facts, and the party challenging the classification must shoulder the burden of demonstrating by a resort to common knowledge or other matters which a court may judicially notice that the challenged classification is arbitrary. (*City of Springfield v. Kable* (1940), 306 Ill. App. 616, 620; *cf. Union Cemetery Association v. Cooper.*) Furthermore, the due process clauses of the Federal and State constitutions, insofar as they operate to limit the exercise of the police power of the State, proscribe only its unreasonable or arbitrary use. (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453.) To constitute a legitimate exercise of the police power, the legislative act in question must bear a reasonable relationship to the public interest sought to be protected and the means adopted must

constitute a reasonable method of accomplishing the intended objective. *Illinois Gamefowl Breeders Association v. Block; Finish Lines Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 138.

As the plaintiff points out, a single application to amend the zoning map from R-1 to R-3 would require the approval of only a simple majority of the city's aldermen regardless of the outcome of the advisory vote of the zoning board of appeals, while a single application for a setback variance would necessitate a two-thirds affirmative vote by the city counsel to override a recommendation of denial by the zoning board of appeals. The plaintiff asserts that there is no rational basis for requiring a two-thirds affirmative vote regarding both items of a combined application when separate applications for a zoning map amendment and a variance would require a two-thirds affirmative vote only in the case of the variance.

We note that Illinois courts have upheld the constitutionality of zoning law provisions requiring greater than majority votes by a legislative body in order to amend or change a zoning classification. (*Chapman v. County of Will* (1973), 55 Ill. 2d 524, and *Herrington v. County of Peoria* (1973), 11 Ill. App. 3d 7, 11, both of which upheld a provision of the county zoning act requiring a three-fourths affirmative vote of all the county board members before a zoning amendment could be granted; *Bredberg v. City of Wheaton* (1962), 24 Ill. 2d 612, 620, which upheld a provision of the Illinois Municipal Code requiring a favorable vote of two-thirds of the aldermen for approval of a zoning amendment or reclassification.) Our supreme court has also sustained the validity of a provision of the county zoning act (Ill. Rev. Stat. 1977, ch. 34, par. 3154) authorizing the granting of a variance by a three-fourths affirmative vote of the county board where the proposed variation fails to receive the approval of the zoning board of appeals. (*Heft v. Zoning Board of Appeals* (1964), 31 Ill. 2d 266, 270.) The above cases indicate that a legislative body has the discretion to predetermine the precise degree of extra diligence which is required when a municipality is effecting important changes in the property rights of its citizens.

■ In addition, a home-rule unit, such as the defendant city, has the power to enact whatever zoning ordinance it chooses as long as the legislative enactment comports with constitutional requirements. (*Johnny Bruce Co. v. City of Champaign* (1974), 24 Ill. App. 3d 900, 904.) Here the plaintiff was seeking two forms of zoning relief simultaneously; both items were interrelated and the desired variance itself, if sought separately, would require a two-thirds affirmative vote for approval. Given the nature of the combined relief sought here, it cannot be said that section 1508 of the city's zoning ordinance is unconstitutional on its face. We are satisfied that the provision in question is not arbitrary or devoid of

any valid legislative purpose, that the legislation is reasonably related to the protection of the public welfare and that the method of regulation is a reasonable means of achieving the desired objective. The trial court could properly conclude, as a matter of law, that the challenged provision was not fatally defective on its face.

■ Finally, the plaintiff's contention that the court should have admitted expert testimony or other evidence to determine whether there was any legitimate legislative purpose which could sustain the challenged section of the ordinance is without merit. On a motion to dismiss, the constitutionality of section 1508 was before the trial court as a matter of law. As has been pointed out above, the provision in question must be upheld if the court can perceive any conceivable legitimate justification for its enactment. (*City of Springfield v. Kable* (1940), 306 Ill. App. 616, 620.) In determining the constitutionality of a zoning ordinance, it is not within the province of the judiciary to examine the motives which prompted the legislative enactment as long as they are not arbitrary. (*City of Champaign v. Roseman* (1958), 15 Ill. 2d 363, 367.) The trial court properly dismissed count III of the complaint.

In count IV of the complaint, the plaintiff challenged the validity of section 301 of the zoning ordinance on its face. In the context of corner lots, section 301 defines "front yard" as "that dimension measured along the street which is the least"; concomitantly, the section defines the rear of a corner lot as the side opposite the front. While the plaintiff raises in his brief on appeal the issue of the section's alleged ambiguity and vagueness, this particular theory was not framed by plaintiff's pleadings in the trial court and therefore was not before the trial court on the motion to dismiss. It should also be mentioned that in the trial court the plaintiff apparently had no trouble with the meaning of section 301 and interpreted it, as did the defendants and as we do, to define the front yard of the corner lot as the shorter dimension of the two sides. We find no ambiguity or vagueness in the section's meaning.

Plaintiff does not assert that all setbacks are *per se* unconstitutional, but asserts only that, as to the specific definitional provision of "front yard" and "rear yard" of section 301, there is no reasonable relationship to a valid governmental objective and therefore this section specifying which frontage shall be treated as the front yard of a corner lot is unconstitutional because the definition is arbitrary.

■ The plaintiff suggests that a more reasonable approach would be to define front yard as that frontage along which the property owner wishes to face the front of his structure. If the plaintiff's rationale or argument were to be adopted, the necessary result would be that the front yard of a corner lot would be determined at the convenience of the individual property owner. A front yard definition is obviously necessary where

corner lots are involved, for without an adequate definition this aspect of the municipality's comprehensive zoning ordinance would become subject to the caprice of the individual property owner on an *ad hoc* basis. The need for uniformity is apparent, and such need alone provides a rational basis for the enactment of the definitional provision in question. Thus, the subject section is not so arbitrary as to rise to the level of constitutional infirmity, since a conceivable legitimate justification exists to sustain it. As was stated with respect to count III, the trial court determined the constitutionality of section 301 on its face, as a matter of law, and expert testimony or other evidence was not necessary for such a determination. Count IV of the complaint was properly dismissed.

In count I, the plaintiff had sought a declaration that the zoning ordinance of the defendant city, as applied to the subject property, was violative of the Federal and State constitutions because it was unreasonable, arbitrary, discriminatory, confiscatory and not reasonably related to the public health, safety, welfare and morals. In his memorandum of opinion the trial judge found (1) that, at most, the plaintiff had established that a reasonable difference of opinion existed between his position and that of the zoning authority, and (2) that the evidence did not demonstrate clearly and convincingly that the ordinance as applied to the subject property was invalid.

■ In its memorandum of opinion the trial court also emphasized the fact that the subject property was bounded on three sides by paved streets which form a natural barrier between the existing R-1 use and all other zoning uses. It has been widely recognized that streets may form legitimate lines of demarcation between zoning classifications. *Cosmopolitan National Bank v. City of Chicago* (1961), 22 Ill. 2d 367, 373; *Zenith Radio Corp. v. Village of Mount Prospect* (1973), 15 Ill. App. 3d 587, 595.

It is also well settled that where, as here, there is a conflict of opinion testimony regarding the pivotal factors involved in zoning cases the credibility of the witnesses is of great importance, and the trial judge is in a superior position to that of a reviewing court in such a situation. When testimony is contradictory in a trial without a jury, the weight to be accorded the conflicting testimony is to be determined by the trial court, and its findings will not be disturbed unless against the manifest weight of the evidence. *Atkins v. County of Cook* (1960), 18 Ill. 2d 287, 297; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48; *Chicago Title & Trust Co. v. Village of Skokie* (1978), 60 Ill. App. 3d 221, 232; *Wheeling Trust & Savings Bank v. County of Lake* (1975), 31 Ill. App. 3d 636, 642.

From a careful review of the record, it cannot be said that the findings of the trial court are against the manifest weight of the evidence. All of the evidence, taken together, supports the trial court's findings and

conclusion that the plaintiff had failed to overcome, by clear and convincing evidence, the presumptive validity of the ordinance as applied to the subject property. The existing single-family zoning classification is not shown by this record to be unreasonable, discriminatory or confiscatory. The property can be used as zoned and has substantial value for such use. The existing R-1 zoning will permit a reasonable economic return to the Scandroli estate. There is ample evidence in the record indicating that the ordinance as applied here is reasonably related to the public welfare. Thus, the action of the trial court in refusing to grant the requested declaratory relief in count I was proper.

Affirmed.

UNVERZAGT and LINDBERG, JJ., concur.