DEBORAH DUNLAP, Plaintiff-Appellant, v. THE VILLAGE OF
SCHAUMBURG et al., Defendants-Appellees.

First District (6th Division)   No. 1—08—1358

Opinion filed September 25, 2009.

Thomas E. Sullivan, of Downers Grove, for appellant.

Jack M. Siegel, of Holland & Knight LLP, of Chicago, for appellees.

JUSTICE JOSEPH GORDON delivered the opinion of the court:
Homeowner Deborah Dunlap filed this suit challenging a decision by the Village of Schaumburg (the Village) to issue a zoning variance

to neighboring homeowners William and Patricia Wehmeier. The Village's zoning ordinance requires homeowners to maintain a 30-foot backyard. The variance at issue allowed the Wehmeiers to build a patio room at the back of their single-family home that would come within 19 feet 3 inches of their rear lot line. Dunlap contended that the granting of this variance was contrary to both local ordinance and state statute. The trial court granted summary judgment in favor of the Village and the Wehmeiers, and Dunlap now appeals. For the reasons that follow, we affirm.[1]

## I. BACKGROUND

Dunlap's second amended complaint against the Village and the Wehmeiers alleges the following facts, which are not in dispute. Dunlap and the Wehmeiers both reside in single-family homes in the Village. The Wehmeiers' residence is immediately adjacent to and abuts the backyard of Dunlap's residence. Both homes are in an R-6 zoning district for single-family residential homes. The Illinois Municipal Code (65 ILCS 5/11—13—1 *et seq.* (West 2006)) (hereinafter Zoning Enabling Act) provides that R-6 lots are required to maintain a backyard of 30 feet. On June 12, 2006, the Wehmeiers applied to the Village for a zoning variance to allow them to build a patio room at the back of their house that would extend to within 19 feet 3 inches of their rear lot line. The Village plan commission held a public hearing on this request, and over Dunlap's objection, it issued a unanimous recommendation to the Village board that the variance be granted. The Village board voted to adopt this recommendation and passed an ordinance granting the requested zoning variation on August 8. Subsequently, a building permit was issued to the Wehmeiers to allow them to begin construction of the patio room.

Dunlap contended that the granting of this ordinance was improper under both Village ordinance and state statute. With regard to the former, she claimed that under section 154.45 of the Schaumburg Village Code (Village Code) (Schaumburg Village Code §154.45

---

[1]This opinion was originally issued as a Supreme Court Rule 23 order in which Justices Robert Cahill and Denise O'Malley concurred.

Subsequently, a motion to publish the Rule 23 order in this case was granted by all three justices on the original panel. This necessitated the withdrawal of the Rule 23 order and the substitution in its place of this opinion. In the interim between the withdrawal of the Rule 23 order and the filing of this opinion, Justice Denise O'Malley retired, thereby necessitating the substitution of Justice McBride to replace Justice O'Malley. Justice McBride has read the briefs and record and has listened to the tape of the oral argument.

(eff. February 12, 2002)), the Village plan commission was only authorized to recommend a variation where carrying out the Zoning Enabling Act as written would cause particular difficulties or hardship, which she alleged the Wehmeiers did not and could not prove. Similarly, with regard to the latter, she claimed that under state statute (65 ILCS 5/11—13—1 *et seq.* (West 2006)), the Village was not authorized to grant a variation absent a showing of "practical difficulties or particular hardship" (65 ILCS 5/11—13—5 (West 2006)) in enforcing the Zoning Enabling Act.

Dunlap therefore brought suit against the Village and the Wehmeiers, relying upon section 11—13—15 (65 ILCS 5/11—13—15 (West 2006)), a provision of the Zoning Enabling Act that empowers private landowners under certain circumstances to bring suit to prevent unlawful land usage:

> "In case any building or structure, including fixtures, is constructed *** in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby, *** any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding *** to restrain, correct, or abate the violation." 65 ILCS 5/11—13—15 (West 2006).

Dunlap sought declaratory judgment against the Village and the Wehmeiers to invalidate the variance and enjoin the Wehmeiers from maintaining any structure within 30 feet of their rear lot line.

The Village filed an answer in which it admitted Dunlap's factual allegations but denied that its granting of the ordinance was in violation of any law. It first contended that Dunlap did not have a valid cause of action against any of the defendants under section 11—13—15, because the statute did not empower private landowners such as Dunlap to sue the public body that granted the ordinance, nor did it empower suit against the Wehmeiers, who were not in violation of any ordinance, as they were acting pursuant to a variance. The Village further contended that a showing of hardship was not required for its variance to be upheld. Rather, it contended that the validity of the variance, as a legislative act by a home rule municipality, was to be determined solely in accordance with the constitutionally mandated standards as set out in *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40, 46, 145 N.E.2d 65, 69 (1957), which provides that zoning ordinances are within the discretion of municipalities unless

they are "arbitrary, capricious or unrelated to the public health, safety and morals."[2]

The Village subsequently filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)), contending that Dunlap could not maintain an action under section 11—13—15 against any of the defendants, for the reasons previously stated in its answer to Dunlap's complaint. The trial court denied the motion. It found that, although a cause of action did not lie against any of the defendants under section 11—13—15, Dunlap could nevertheless proceed under the 2006 amendment to section 11—13—25(a):

"Any special use, variance, rezoning, or other amendment to a zoning ordinance adopted by the corporate authorities of any municipality, home rule or non-home rule, shall be subject to de novo judicial review as a legislative decision, regardless of whether the process of its adoption is considered administrative for other purposes." 65 ILCS 5/11—13—25(a) (West 2006).

The trial court found that pursuant to this section, the zoning variance at issue was a legislative act, which made it subject to judicial review with respect to its compliance with the standards articulated in *La Salle*.

On January 30, 2008, the Village filed a motion for summary judgment in which the Wehmeiers later joined. In its motion, the Village reiterated its argument that Dunlap did not have a valid cause of action against the defendants under section 11—13—15. It additionally argued that, even if Dunlap were allowed to proceed under section 11—13—25(a), she still could not prevail, because she could not demonstrate by clear and convincing evidence that the zoning variance was arbitrary and capricious under the standard articulated in *La Salle*, which it contended was the sole applicable standard for evaluating the validity of the variance.

Dunlap filed a cross-motion for summary judgment on February 1, 2008. In her motion, she argued that, contrary to the Village's contention, the Village lacked the power to grant the zoning variance absent a showing that the Wehmeiers would suffer hardship if the variance

---

[2]In making this determination, the factors, which shall be discussed more extensively below, include: (1) existing zoning and uses of nearby property; (2) extent to which property values are diminished by the zoning restriction at issue; (3) extent to which this diminution, if any, promotes the public health, safety, morals, or general welfare; (4) relative gain to the public compared to the hardship imposed on the property owner; (5) suitability of the subject property for the zoned purposes; and (6) length of time the property has been vacant as zoned. *La Salle*, 12 Ill. 2d at 46-47, 145 N.E.2d at 69.

were not granted. She further contended that the Village and the Wehmeiers had failed to present any evidence of hardship that would create a material issue of fact as to that question.

In ruling upon the motion for summary judgment, the court considered the affidavit of Patricia Wehmeier, in which she averred that she had been diagnosed with basal cell carcinoma in 2000 and, as a result, her health care professionals had told her to avoid extended exposure to sunlight. It was allegedly because of this condition that she and her husband decided to build the patio room so that she could derive use and simple enjoyment from her home's backyard. "Affiant's medical condition required the room to be added," stated the affidavit, "and failure to utilize the full extent of her property constituted a significant and extended hardship."

The court also considered the depositions of Dunlap and the Wehmeiers, as well as the depositions of expert witnesses from both sides. Christopher Huff, expert witness for the Village, identified himself in his deposition as the Village's director of community development. He testified that it was his job to deal with applications for zoning variances in the Village. He would assign each application to a case manager, who would prepare a draft recommendation to either grant or deny the requested variance; the recommendation would then be sent to him for his approval. This would occur before any hearing on the variance was held.

Huff stated that he recommended that the Wehmeiers' request for a variance be granted for a number of reasons. First, he stated that the patio room was to be built on the site of a previously existing deck that had been in the backyard since 1978. He explained that this deck was in conformity with Village ordinances, which classify decks as accessory structures that are not subject to the 30-foot rule. As a result of this preexisting deck, Huff stated, the construction of a patio room would not decrease the green space in the yard at all.

Second, Huff stated that there had been many other, similar variances granted in the Village, including 14 within 1,200 feet of the Wehmeiers' residence. He said that the Village is typically "very accommodating" in granting variances extending up to around 18 feet from the back property line. Furthermore, he stated, "it is a very normal utilitarian porch addition to an existing suburban home, and there are any number of thousands of those scattered throughout Schaumburg, if not the northwest suburbs."

When asked about the variance's compliance with the standards articulated in La Salle, 12 Ill. 2d at 46-47, 145 N.E.2d at 69, for determining the validity of zoning ordinances, Huff averred the following. The variance, Huff stated, would not affect the uses of nearby

property, which would remain residential. He opined that the variance would not cause any diminution in property value; indeed, he said, the fact that money was being spent on improving a home would have a positive effect. There would be no impact on the health, safety, morals, and general welfare of the public, he said. In fact, he said that there would be no impact on the public whatsoever. Finally, he said that the land would be suitable for residential purposes with or without the variance.

Huff testified that the hardship the Wehmeiers would suffer from not being granted a variance would be an inability to build the patio room they wanted. When Huff was asked by counsel for Dunlap what the legal definition of hardship was, counsel for the Wehmeiers objected on grounds that the question required a legal conclusion; Huff nevertheless stated that he did not know the legal definition.

William Wehmeier, in his deposition, testified that he had been living in his Village home for around 12 years. He said that he wanted a patio room for sitting in, reading, talking with his wife, eating, and relaxing. When asked why he believed he should be granted a variance to build the patio room, he answered, "We followed every rule; we filed for every permit. We've done this to the letter of the law." He acknowledged that when he received the building permit, he understood that he was building at his own risk and might subsequently be required to remove the construction described in the permit if the court ruled against him.

Patricia Wehmeier testified in her deposition that the patio room was intended for uses such as relaxing, reading books, having meals, entertaining guests, and possibly playing games. She stated that she had no opinion on why she was entitled to a variance to build such a room.

Dunlap testified in her deposition that she had a number of objections to the Wehmeiers' patio room. First, she said that she did not like how it looked because "visually it's too close to the property line." She believed it to be an intrusion on her privacy. She stated that she had a chain-link fence and a row of bushes around six to eight feet high on the border with the Wehmeiers' property, but that the bushes did not have leaves in winter. Second, Dunlap complained that the light in the patio room was too bright. She admitted that before the patio room was built, she could see the lights from the Wehmeiers' kitchen at night. Third, although Dunlap acknowledged that there was currently no noise pollution from the patio room, she testified that she was concerned that there might be noise pollution at some later date. She stated that she had not minded noise coming from the deck when the Wehmeiers would have guests over; however, she

believed that she would receive more noise from an enclosed structure near her property than an open deck the same distance away.

Dunlap emphasized in her deposition that no evidence had been presented of hardship for the Wehmeiers if the variance were not granted, neither at the Village plan commission hearing nor at the Village board meeting. She also testified that she was worried about possible diminution in value of her property as a result of the addition.

Norbert Pointner, expert witness for Dunlap, stated in his deposition that he was a city planner and architect who had been hired by counsel for Dunlap to evaluate the variance in light of the local zoning ordinances, the applicable state statutes, and the *La Salle* rezoning criteria. He stated that he prepared his report by studying photographs of the property, the laws at issue, a list of zoning variations granted in the area, a map of the area, and some documents from the Village board. At the time he prepared the report, he had not personally viewed the property, but he subsequently made a site visit, which confirmed his opinions.

Pointner opined that the Wehmeiers' patio room formed a "visual intrusion" into the privacy of Dunlap's yard, due to the glass walls, the roof light, and the lack of intervening landscaping in winter. He said that a deck alone would not have been a similar visual intrusion.

Pointner testified that there was nothing in the deposition testimony of Huff and the Wehmeiers that would indicate hardship to the Wehmeiers if the variation were not granted. Indeed, he stated that because of the shape of the Wehmeiers' property, they could have located the patio room elsewhere on their property without needing to obtain a variance. He further opined that even if the *La Salle* rezoning criteria were to apply, the defendants did not satisfy the requirements for granting a variance under those criteria. With regard to the existing use of the land, he stated that the subdivision where the Wehmeiers lived was consistently used as single-family housing, and denial of the variance would not conflict with that. With regard to property values, he stated that a patio room was not necessary to preserve the value of the Wehmeiers' land and could potentially reduce the value of Dunlap's land, although he acknowledged that he was not an appraiser. He stated that the variance would not promote health, safety, or welfare, nor was it necessary to preserve the suitability of the property for residential use. Finally, he stated that the property had not been left vacant, so the final factor did not apply.

On May 5, 2008, the trial court granted defendants' motion for summary judgment and denied Dunlap's motion for summary judgment. The court found that the Wehmeiers were not required to show hardship in order for the variance to be upheld, since (1) the state

statute cited by Dunlap, namely section 11—13—5 of the Zoning Enabling Act (65 ILCS 5/11—13—5 (West 2006)), which requires a showing of hardship, did not apply to home rule municipalities such as the Village, and (2) regardless of the Village's home rule status, the action taken by the Village in modifying its own zoning requirements was legislative in character, so it could not be overturned simply by reason of its alleged failure to comply with its own self-imposed requirements under its Village Code. The court instead found that the variance would be upheld unless Dunlap could meet her burden of demonstrating by clear and convincing evidence that it was arbitrary, unreasonable, and bore no substantial relation to public health, safety, or welfare under the standards articulated in *La Salle*, 12 Ill. 2d at 46-47, 145 N.E.2d at 69. After reviewing the evidence presented, the court concluded that Dunlap could not meet that burden. It is from this judgment that Dunlap now appeals.

## II. ANALYSIS

Dunlap raises four main contentions on appeal. First, she argues that she has a valid cause of action against the defendants under section 11—13—15 of the Zoning Enabling Act (65 ILCS 5/11—13—15 (West 2006)), or, in the alternative, under section 11—13—25(a) (65 ILCS 5/11—13—25(a) (West 2006)). Second, she argues that, in ruling upon the validity of the variance, this court cannot simply look to the *La Salle* arbitrariness standard, but must also assess the Village's compliance with the terms of the Village Code and the Zoning Enabling Act, both of which require a showing of hardship for the granting of a variance. Third, she argues that she is entitled to summary judgment in her favor, as she contends that her adversaries have failed to present evidence creating a material issue of fact on whether the Village complied with applicable standards in issuing the Wehmeiers' requested variance. In that regard, she claims that the burden of proof is properly on the Village and the Wehmeiers, as they are the side seeking to justify a variance that changes an existing ordinance.

Putting aside for the moment any question of the standard of review applicable to legislative acts under section 11—13—25(a), which shall be discussed below, our review of a summary judgment, in any event, is *de novo. Lapp v. Village of Winnetka*, 359 Ill. App. 3d 152, 160, 833 N.E.2d 983, 990 (2005).

### A. Dunlap's Right of Action Under the Zoning Enabling Act

In response to Dunlap's initial contention that she may maintain a direct action against the Village as well as the Wehmeiers, the Village argues, as it did before the court below, that Dunlap's suit must fail because a valid cause of action does not lie against any of them

under the provisions of the Zoning Enabling Act that Dunlap purports to bring her suit under. First, the Village asserts that it is not a proper defendant under section 11—13—15 because that section does not empower a private landowner to sue a city or a village. The Village further contends that section 11—13—25(a) does not expand private landowners' right of suit, but merely clarifies the terms under which such suits by private landowners are to take place. Second, the Village asserts that the Wehmeiers are not proper defendants under section 11—13—15 because Dunlap concedes they are acting pursuant to a variance and therefore has not alleged any unlawful land usage by them. We consider these assertions in turn.

■ Section 11—13—15 of the Zoning Enabling Act, which Dunlap originally brought her suit under, provides, in relevant part:

"In case any building or structure, including fixtures, is constructed *** in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby, *** any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding *** to restrain, correct, or abate the violation." 65 ILCS 5/11—13—15 (West 2006).

The purpose of this section is to afford relief to private landowners in cases where municipal officials are slow or reluctant to act, or where their actions do not protect the landowners' interests. *Launius v. Najman*, 129 Ill. App. 3d 498, 502, 472 N.E.2d 170, 173 (1984).

Although it is not apparent from the face of the statute, section 11—13—15 has been consistently held not to provide a private right of action against a city. *Heerey v. Berke*, 179 Ill. App. 3d 927, 934, 534 N.E.2d 1277, 1281 (1989); *City of Aurora v. Navar*, 210 Ill. App. 3d 126, 138, 568 N.E.2d 978, 986 (1991) (rejecting plaintiff's claim that section 11—13—15 "provide[s] a cause of action to ensure a city's compliance with its own ordinances"). Rather, it only empowers private landowners to bring suit against private violators. *Heerey*, 179 Ill. App. 3d at 934, 534 N.E.2d at 1281. Thus, in *Heerey*, where plaintiff sought an injunction against the city of Chicago under section 11—13—15 to prevent it from issuing certain building permits, the court found that his suit was properly dismissed. *Heerey*, 179 Ill. App. 3d at 932, 534 N.E.2d at 1280. The court explained:

"Although the terms of the statute provide that either the city or an adjacent landowner may institute proceedings against private

landowners who violate zoning ordinances, the language of the statute does not provide a cause of action against the city by a landowner. Plaintiff's argument that section 11—13—15 permits a cause of action against the city since it does not preclude it is contrary both to the language of the statute and to the rules of statutory construction, which provide that the plain and obvious meaning of a statute may not be enlarged by the court." *Heerey*, 179 Ill. App. 3d at 934, 534 N.E.2d at 1281. Likewise, under *Heerey*, section 11—13—15 does not empower Dunlap to maintain a cause of action against the Village for an alleged zoning violation.

■ Dunlap next contends that, even if suit against the Village is improper under section 11—13—15, she may still bring an action against it under the 2006 amendment to the Zoning Enabling Act which created section 11—13—25(a), reading as follows:

"Any special use, variance, rezoning, or other amendment to a zoning ordinance adopted by the corporate authorities of any municipality, home rule or non-home rule, shall be subject to de novo judicial review as a legislative decision, regardless of whether the process of its adoption is considered administrative for other purposes." 65 ILCS 5/11—13—25(a) (West 2006).

Dunlap argues that this section provides her an independent right of action against the Village that is not subject to the restrictions on suit under section 11—13—15. The Village, on the other hand, contends that section 11—13—25(a) does not grant private landowners an independent right of action, but merely clarifies the terms under which suits properly initiated under section 11—13—15 are to be conducted. Accordingly, it argues that any right of suit that Dunlap may have under section 11—13—25(a) is derivative of, and necessarily limited by, the right of suit granted under section 11—13—15. We agree.

As the Village urged in oral argument before this court, the 2006 amendment to section 11—13—25(a) must be understood as a response to the Illinois Supreme Court's decision in *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 781 N.E.2d 223 (2002), where the court ruled that, in conducting a hearing on an application for a special use permit, the defendant municipality was acting in an administrative capacity (also referred to as a quasi-judicial capacity) rather than a legislative capacity. *Millineum Maintenance Management, Inc. v. County of Lake*, 384 Ill. App. 3d 638, 647, 894 N.E.2d 845, 856 (2008) ("[L]egislative history very clearly demonstrates that the legislature's intent in creating section 5—12012.1 was to nullify the effect of *Klaeren* with respect to all county or municipal decisions on the types of zoning matters listed in the statute, so that all of those matters

would receive judicial review as indicated in the statute instead of as indicated in *Klaeren*").

In *Klaeren*, residents of the Village of Lisle challenged the zoning board's decision to grant a special use permit to Meijer, Inc., to build a retail store in the village. *Klaeren*, 202 Ill. 2d at 167, 781 N.E.2d at 224. The *Klaeren* court faced the question of whether this decision should be reviewed as a legislative or an administrative decision. Administrative decisions, which, as noted earlier, are also referred to as quasi-judicial decisions, " 'concern agency decisions that affect a small number of persons on individual grounds based on a particular set of disputed facts that were adjudicated.' " *Millineum*, 384 Ill. App. 3d at 641, 894 N.E.2d at 851, quoting *American Federation of State, County & Municipal Employees, Council 31 v. Department of Central Management Services*, 288 Ill. App. 3d 701, 711, 681 N.E.2d 998, 1005 (1997) (*AFSCME*). Legislative decisions, on the other hand, " 'involve general facts affecting everyone.' " *Millineum*, 384 Ill. App. 3d at 641, quoting *AFSCME*, 288 Ill. App. 3d at 711, 681 N.E.2d at 1005.

These two types of decisions are subject to different standards of review. Legislative decisions made by municipalities are subject to review only "for arbitrariness as a matter of substantive due process." *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 14, 749 N.E.2d 916, 925 (2001); see *Klaeren*, 202 Ill. 2d at 182, 781 N.E.2d at 233. That is, such decisions will be upheld if they represent a rational means to accomplish a legitimate purpose, as long as a fundamental constitutional right is not implicated. *Millineum*, 384 Ill. App. 3d at 642-43, 894 N.E.2d at 852. As the *Klaeren* court acknowledged, Illinois courts have traditionally placed most zoning decisions in this category:

> " 'It is well established that it is primarily the province of the municipal body to determine the use and purpose to which property may be devoted, and it is neither the province nor the duty of the courts to interfere with the discretion with which such bodies are vested unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to the public health, safety and morals.' " *Klaeren*, 202 Ill. 2d at 182, 781 N.E.2d at 233, quoting *La Salle*, 12 Ill. 2d at 46, 145 N.E.2d at 68.

As a result, "the landholder's compliance with any special use criteria listed in the zoning ordinance is merely a factor to consider, not the dispositive consideration, in determining whether the granting or denial of the permit application was arbitrary and unreasonable." *Living Word*, 196 Ill. 2d at 14, 749 N.E.2d at 925; see *National Pride Equipment, Inc. v. Village of Niles*, 109 Ill. App. 3d 639, 645, 440 N.E.2d 1053, 1057 (1982) (noting that " 'while strict adherence to the

legislative body's own standards is not required of that body in passing on special uses, a legislative body must exercise its power in a reasonable way and adherence to these standards is a strong indication of reasonableness' "), quoting *La Salle National Bank v. County of Lake*, 27 Ill. App. 3d 10, 17, 325 N.E.2d 105, 111 (1975).

On the other hand, administrative or quasi-judicial decisions are subject to a heightened level of judicial scrutiny. At the time of the *Klaeren* decision, municipal rulings on applications for special use permits had sometimes been ruled to fall into this category. See *Living Word*, 196 Ill. 2d at 13, 749 N.E.2d at 924. When a municipality makes an administrative zoning decision, " 'it must follow the zoning regulations, and its actions are reviewable, and subject to judicial reversal if they are without support in the record or are otherwise arbitrary or unreasonable.' " *Living Word*, 196 Ill. 2d at 13, 749 N.E.2d at 925, quoting 3 K. Young, Anderson's American Law of Zoning §21.10, at 720 (4th ed. 1996). Thus, the reviewing court not only considers whether the decision is arbitrary, but also considers whether it was made in compliance with any criteria in the zoning ordinance based upon the facts in the record. *Living Word*, 196 Ill. 2d at 13-14, 749 N.E.2d at 925.

The *Klaeren* court found that a heightened level of scrutiny was appropriate in order to protect the due process rights of interested property owners. *Klaeren*, 202 Ill. 2d at 183, 781 N.E.2d at 234. Accordingly, it held that "municipal bodies act in administrative or quasi-judicial capacities when those bodies conduct zoning hearings concerning a special use petition." *Klaeren*, 202 Ill. 2d at 183, 781 N.E.2d at 234. It then proceeded to find that the zoning board had failed to implement proper procedural safeguards to protect landowners' due process rights under an administrative standard of review. *Klaeren*, 202 Ill. 2d at 185, 781 N.E.2d at 235.

In enacting the 2006 amendment to section 11—13—25(a), which Dunlap seeks to rely upon in the instant suit, the legislature expressly responded to the decision in *Klaeren* by passing legislation that defines every "special use, variance, rezoning, or other amendment to a zoning ordinance" (65 ILCS 5/11—13—25(a) (West 2006)) as a legislative act rather than as an administrative act for purposes of review. *Millineum*, 384 Ill. App. 3d at 647, 894 N.E.2d at 855. It thereby does away with any distinction in the standard of review between variances and other forms of zoning ordinance amendments. See *Living Word*, 196 Ill. 2d at 17, 749 N.E.2d at 927 (pre-2006 discussion of the distinction between special uses and variances). As the *Millineum* court discusses, this amendment was born out of the legislature's concern that corporate authorities of municipalities lacked the resources to

conduct proceedings that would conform to the heightened level of scrutiny that is placed upon administrative decisions. *Millineum*, 384 Ill. App. 3d at 646-47, 894 N.E.2d at 855.

Thus, as the Village has argued, the intent of the legislature in enacting this amendment to the Zoning Enabling Act was not to expand private landowners' right to take judicial action against municipal zoning decisions, but rather to clarify that when such challenges are properly made, the decisions are to be reviewed under the standards for legislative rather than administrative actions. As has been discussed above, Dunlap does not have a valid right of suit against the Village under section 11—13—15 of the Zoning Enabling Act. Consequently, section 11—13—25(a) affords her no independent or expanded right of suit, and her cause of action against the Village must therefore fail.

The Village's next contention is that Dunlap cannot proceed against the Wehmeiers under section 11—13—15. Suit against a private landowner under section 11—13—15 is only proper where the landowner has allegedly committed a violation of the Zoning Enabling Act, the unsafe property code (65 ILCS 5/11—31—1 *et seq.* (West 2006)), or the building code violations code (65 ILCS 5/11—31.1—1 *et seq.* (West 2006)), of which only the Zoning Enabling Act is at issue in this litigation. 65 ILCS 5/11—13—15 (West 2006); see *Richardson v. Kitchin*, 75 Ill. App. 3d 961, 965, 394 N.E.2d 796, 800 (1979) (stating that "section 11—13—15 of the Municipal Code applies only when buildings are constructed in violation of local zoning ordinance").

In this case, Dunlap concedes in her complaint that the Village granted the Wehmeiers a variance and a building permit to build the patio room at issue. Therefore, argues the Village, under the undisputed facts, the Wehmeiers have not committed any violation of the Zoning Enabling Act and are not proper defendants. See *Living Word*, 196 Ill. 2d at 17, 749 N.E.2d at 927 (defining a variance as " ' "authority extended to a property owner to use his property in a manner forbidden by the zoning enactment" ' "), quoting 3 K. Young, Anderson's American Law of Zoning §20.03, at 416 (4th ed. 1996), quoting *Mitchell Land Co. v. Planning & Zoning Board of Appeals*, 140 Conn. 527, 532, 102 A.2d 316, 319 (1953). Dunlap, on the other hand, contends that, because the variance is invalid, it confers no actual authority upon the Wehmeiers, and the underlying zoning ordinance, which the variance attempted to alter, controls. Thus, she argues, by building their patio room within 30 feet of the property line in contravention of the underlying zoning ordinance, the Wehmeiers are indeed private violators under the terms of section 11—13—15.

It would seem that if the variance were invalid, it would not extend any protection to the Wehmeiers against suit by a neighbor under section 11—13—15, even though that neighbor could not use that section to challenge the variance through a direct suit against the Village. However, in point of fact, we find Dunlap's contentions concerning the validity of that ordinance to be without merit, for the reasons that shall be discussed below.

### B. Standard for Determining Validity of the Variance

In determining whether the variance passed by the Village is a valid one, we must first ascertain the standard which must be applied in determining its validity. In that respect, Dunlap contends that a variation may not be granted absent a finding that the Wehmeiers will suffer "practical difficulties or particular hardship" if they do not receive a variation. She argues that such a finding is required pursuant to both section 11—13—5 of the Zoning Enabling Act (65 ILCS 5/11—13—5 (West 2006)) and section 154.45 of the Village Code (Schaumburg Village Code §154.45 (eff. February 12, 2002)), and that since the Wehmeiers have not shown any such hardship, the grant of the variance is invalid. However, in addressing the merits, the Village contends that a showing of hardship is not necessary, since the cited provision of the Zoning Enabling Act does not apply to home rule municipalities such as the Village, and since the variance at issue is legislative in nature, which means that a reviewing court lacks the power to consider the enacting body's compliance with the self-imposed requirements of the Village Code. Rather, the Village contends that the variance is valid as long as it represents a rational means to accomplish a legitimate purpose (*Millineum*, 384 Ill. App. 3d at 642-43), as measured according to the factors articulated in *La Salle*, 12 Ill. 2d 40. We agree with the Village.

■ Section 11—13—5 of the Zoning Enabling Act, which was enacted in 1961 (see 1961 Ill. Laws 576, eff. July 1, 1961), provides:

"In municipalities of less than 500,000 population, the regulations authorized by this Division 13 may provide that the board of appeals or corporate authorities may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained *in cases where there are practical difficulties or particular hardship in the way of carrying out the strict letter of any of those regulations* relating to the use, construction, or alteration of buildings or structures or the use of land." (Emphasis added.) 65 ILCS 5/11—13—5 (West 2006).

Dunlap argues that, under the plain language of this section, the Village is not authorized to grant a variance to the Wehmeiers absent a

showing of hardship. The Village, however, contends that it is not subject to the strictures of this section, because the Village is a home rule unit.

The zoning power of home rule units of government stems from the broad grant of power in article VII, section 6(a), of the Illinois Constitution of 1970. Ill. Const. 1970, art. VII, §6(a). This section defines a home rule unit as any municipality with a population of over 25,000, or any county with a chief executive officer elected by the electors of the county, and then provides:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare." Ill. Const. 1970, art. VII, §6(a).

See generally *Clarke v. Village of Arlington Heights*, 57 Ill. 2d 50, 53, 309 N.E.2d 576, 578 (1974) (explaining that " '[u]nder the home-rule provisions of the 1970 constitution, however, the power of the General Assembly to limit the actions of home-rule units has been circumscribed and home-rule units have been constitutionally delegated greater autonomy in the determination of their government and affairs' "), quoting *Kanellos v. County of Cook*, 53 Ill. 2d 161, 166, 290 N.E.2d 240, 243 (1972).

Although this grant of power is to be construed liberally (Ill. Const. 1970, art. VII, §6(m)), it is not absolute. *Ampersand, Inc. v. Finley*, 61 Ill. 2d 537, 542, 338 N.E.2d 15, 18 (1975). The limits of home rule power under this section were explained by a committee on local government in the report it presented to the constitutional convention that enacted the 1970 constitution:

" 'It is clear, however, that the powers of home rule units relate to their own problems, not to those of the state or the nation. Their powers should not extend to such matters as divorce, real property law, trusts, contracts, etc. which are generally recognized as falling within the competence of state rather than local authorities. Thus the proposed grant of powers to local governments extends only to matters "pertaining to their government and affairs." ' " *Ampersand*, 61 Ill. 2d at 540, 338 N.E.2d at 17, quoting 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1621.

Zoning has consistently been held by courts to be a local matter within the authority of home rule units. See *Village of Tinley Park v. Ray*, 299 Ill. App. 3d 177, 178, 700 N.E.2d 705, 706 (1998); *Thompson v. Cook County Zoning Board of Appeals*, 96 Ill. App. 3d 561, 569, 421 N.E.2d 285, 292 (1981); *Johnny Bruce Co. v. City of Champaign*, 24 Ill. App. 3d 900, 903-04, 321 N.E.2d 469, 472 (1974) (noting that in addi-

tion to Illinois, the states of Colorado, California, Ohio, Minnesota, Wisconsin, and New York have all determined zoning to be a matter of local concern in the context of home rule legislation). Consequently, under the grant of power contained in the 1970 constitution, a home rule unit has the power to enact zoning ordinances of its choice as long as those ordinances comply with constitutional requirements. *Thompson*, 96 Ill. App. 3d at 569, 421 N.E.2d at 292, citing *Scandroli v. City of Rockford*, 86 Ill. App. 3d 999, 1002, 408 N.E.2d 436, 439 (1980). The *Johnny Bruce* court discussed the broad reach of this authority in considering zoning legislation passed by Champaign, a home rule unit:

> "Legislative provisions heretofore existing limiting the authority of municipalities that are now home-rule units may be superseded by valid legislative action of a home-rule unit. [Citation.]
>
> It is thus apparent that the city of Champaign in the adoption of its general zoning ordinance or an amendment thereto relating to [defendant corporation's planned real estate development] is not limited in the exercise of its power by the then-existing enabling statutes. It has plenary power in this regard." *Johnny Bruce*, 24 Ill. App. 3d at 904, 321 N.E.2d at 472, citing *Clarke*, 57 Ill. 2d at 53, 309 N.E.2d at 578 (under the authority granted by the 1970 constitution, defendant home rule municipality had power to change office of village clerk from elective to appointive and increase the number of village trustees, even though such action was in contravention of pre-1970 state statutory provisions).

■ In this regard, the facts of *Thompson* are illustrative. The *Thompson* plaintiffs challenged a decision of the Board of Commissioners of Cook County to grant an amendatory zoning ordinance and special use for a single-family housing development. *Thompson*, 96 Ill. App. 3d at 564, 421 N.E.2d at 289. Plaintiffs contended, among other things, that the decision was invalid because it did not comport with the provisions of the county zoning enabling act, which required that certain voting procedures be followed when modifying an existing zoning ordinance. *Thompson*, 96 Ill. App. 3d at 568-69, 421 N.E.2d at 292. However, the court found that the Board of Commissioners of Cook County was not required to apply the provisions of that act, as Cook County was a home rule unit and therefore had plenary power over zoning decisions. *Thompson*, 96 Ill. App. 3d at 569, 421 N.E.2d at 292. Likewise, the Village, in enacting the variance at issue in an exercise of its home rule power, is bound to conform to constitutional standards as articulated in *La Salle*, 12 Ill. 2d at 46, 145 N.E.2d at 69, but under the 1970 constitution it is not bound to follow the pre-1970 provisions

of the Zoning Enabling Act, such as the hardship provision of section 11—13—5, to the extent they conflict with the variance.[3]

Nor is the Village required to comply with the hardship requirements contained in section 154.45 of the Village Code, which states that a variance may be granted "when the Board has made a finding of fact, based upon the standards hereinafter described, that there are practical difficulties or particular hardship in the way of carrying out the strict letter of the regulations of this chapter." Schaumburg Village Code §154.45(A) (eff. February 12, 2002). As discussed above, zoning variances are classified as legislative acts for purposes of judicial review under section 11—13—25(a) (65 ILCS 5/11—13—25(a) (West 2006)), which means that they will be upheld as long as they represent a rational means to accomplish a legitimate purpose (*Millineum*, 384 Ill. App. 3d at 642-43, 894 N.E.2d at 852). That is, a variance will not be struck down unless it is found to be arbitrary, unreasonable, and bearing no substantial relation to the public health, safety, morals, comfort, or general welfare. *Kleidon v. City of Hickory Hills*, 120 Ill. App. 3d 1043, 1053, 458 N.E.2d 931, 940 (1983); *Lapp*, 359 Ill. App. 3d at 170, 833 N.E.2d at 998, citing *La Salle*, 12 Ill. 2d at 46, 145 N.E.2d at 68. Accordingly, a legislative body passing on a variance or other zoning ordinance is not strictly required to conform to its own standards as long as it meets this reasonableness test. *National Pride Equipment*, 109 Ill. App. 3d at 645, 440 N.E.2d at 1057 (noting that a legislative body's adherence to internal standards is not necessary for

---

[3]Dunlap cites *Patrick Media Group, Inc. v. Ad-Ex, Inc.*, 240 Ill. App. 3d 487, 495, 608 N.E.2d 427, 432 (1992), for the proposition that even home rule units are subject to the terms of the Zoning Enabling Act. However, we find this case to be inapposite, as it does not deal with a situation where the zoning enactments of a home rule unit come into conflict with state legislation. In *Patrick*, the issue was whether a private landowner was empowered under section 11—13—15 to bring suit against another private landowner for alleged violations of the local zoning ordinances of Chicago, a home rule unit. *Patrick*, 240 Ill. App. 3d at 487-88, 608 N.E.2d at 428. The court held that Chicago's home rule status did not deprive the plaintiff of standing to bring suit under section 11—13—15 to enforce Chicago's zoning ordinances. *Patrick*, 240 Ill. App. 3d at 492, 608 N.E.2d at 429. Unlike the present case, *Patrick* does not deal with a challenge to the validity of a home rule zoning ordinance, and thus it does not purport to deal with the issue currently before us, namely, the scope of a home rule unit's power to enact its own zoning ordinances in the face of conflicting pre-1970 state legislation. Accordingly, contrary to Dunlap's contention in her brief, Dunlap cannot rely on *Patrick* for the proposition that the Village's grant of a variance to the Wehmeiers is invalidated by the hardship requirements contained in section 11—13—5.

a zoning act to be upheld as reasonable, although such adherence is " 'a strong indication of reasonableness' "), quoting *La Salle National Bank v. Lake County*, 27 Ill. App. 3d at 17, 325 N.E.2d at 111; see also *Living Word*, 196 Ill. 2d at 13-14, 749 N.E.2d at 925 (contrasting legislative acts with administrative acts, where compliance with internal standards is required). Therefore, contrary to Dunlap's assertion, the Village's failure to comply with its internal requirement that a variance be supported by a finding of practical difficulties or particular hardship is not, in itself, sufficient to invalidate the variance.

## C. Burden of Proof

Regardless of what the standards for determining the validity of the variance are, Dunlap claims that it is not for her to prove that these standards have not been met, but rather it is for the defendants to prove that they have been met. We disagree.

■ It is a well-established rule of law that the party challenging a variance has the burden of showing it to be invalid. See *Kleidon*, 120 Ill. App. 3d at 1053, 458 N.E.2d at 940; *Lapp*, 359 Ill. App. 3d at 170, 833 N.E.2d at 998. Dunlap, however, argues that this rule is changed by section 11—13—25(a)'s provision that "[a]ny special use, variance, rezoning, or other amendment to a zoning ordinance adopted by the corporate authorities of any municipality *** shall be subject to *de novo* judicial review as a legislative decision." (Emphasis added.) 65 ILCS 5/11—13—25(a) (West 2006). She contends that, because our review in this case is "*de novo*," the burden should be shifted to the Village to show that the variance granted to the Wehmeiers satisfies the *La Salle* standard. The Village, on the other hand, argues that the burden of proof lies upon Dunlap, as the party challenging the validity of the zoning ordinance at hand, and the fact of *de novo* review under section 11—13—25(a) does not shift the burden of proof to the other party.

A trial *de novo* is considered a " 'new adversary proceeding' " in which the reviewing court gives no deference to the decision below (in this case, the decision of the Village Board). *Ray v. Illinois Racing Board*, 113 Ill. App. 3d 510, 515, 447 N.E.2d 886, 898 (1983), quoting *Local Liquor Control Comm'n v. Illinois Liquor Control Comm'n*, 59 Ill. App. 3d 1, 5, 374 N.E.2d 1298, 1301 (1978). Rather, the court undertakes " 'an examination of testimony and an independent finding made as fully as though the action was originally instituted in that court.' " *Pittsburgh S.S. Co. v. Brown*, 171 F.2d 175, 178 (7th Cir. 1948), quoting *Fowler v. Young*, 77 Ohio App. 20, 26, 65 N.E.2d 399, 406 (1995).

However, the *de novo* review of zoning decisions provided for in section 11—13—25(a) is limited by that same section's characterization of such decisions as legislative in nature. As the *Millineum* court explains:

"[W]holly '*de novo*' judicial review of an administrative decision impermissibly invites the judiciary to perform executive functions, and thus separation of powers principles require some limitation on any such '*de novo*' review. The 'as a legislative decision' language invokes the alternative type of review described in *Living Word Outreach*: review 'for arbitrariness as a matter of substantive due process.' [Citation.] This so-called 'legislative' test prescribes the deference to agency decision making ***, because it requires not that a court independently reevaluate facts or assert independent judgment, but rather that a court intervene only where there was no rational basis for the challenged decision, just as it would with a legislative enactment. Though the '*de novo*' language indicates that, unlike typical administrative review, evidence outside the already-developed record may be presented to the trial court, that evidence must bear on a much narrower question than is presented in typical administrative review." *Millineum*, 384 Ill. App. 3d at 652-53, 894 N.E.2d at 860, citing *Living Word*, 196 Ill. 2d at 14, 749 N.E.2d at 925.

Dunlap argues that *de novo* judicial review under section 11—13—25(a) requires the burden of proof to be the same as it was before the legislative body who made the decision now being challenged. Since the Wehmeiers were the party originally seeking to obtain relief from the existing zoning ordinance in the form of a variance, Dunlap argues that the burden of proof should be upon them. However, in light of the limitations on *de novo* review of zoning ordinances as described by the *Millineum* court, this argument is ill-founded. Although the *de novo* standard may well relieve us from giving deference to the actions of the Village board (*Ray*, 113 Ill. App. 3d at 515, 447 N.E.2d at 898), and although it might even go so far as to allow presentation of new evidence (*Millineum*, 384 Ill. App. 3d at 652, 894 N.E.2d at 860), it does not mean that we step into the Village board's shoes and exercise our independent judgment on whether the Wehmeiers should be entitled to a variance, which, in effect, is what Dunlap appears to be arguing. Rather, our inquiry is strictly limited to the question of whether there was any rational basis for the Village board's decision that such a variance was warranted. *Millineum*, 384 Ill. App. 3d at 652, 894 N.E.2d at 860. As such, Dunlap is still the party challenging a legislative enactment, and the burden of proof still properly remains with her to show that no such rational basis exists. See *Kleidon*, 120 Ill. App. 3d at 1053, 458 N.E.2d at 940.

Dunlap provides no law to the contrary on this issue. She argues that the instant case is analogous to *Pittsburgh S.S.*, 171 F.2d 175; we agree, but we find that this case supports the Village's position on the burden of proof, not hers. *Pittsburgh S.S.* concerned an action instituted by an employer under the Longshore and Harbor Workers' Compensation Act (33 U.S.C. §921(b)). The deputy commissioner found that an employer was liable under the Act to pay damages to the family of a deceased employee; pursuant to the Act, the employer obtained a trial *de novo* on the issue of whether the award of damages was warranted. *Pittsburgh S.S.*, 171 F.2d at 176. The court found that the burden of proof properly belonged to the employer and reversed the trial court's decision to the contrary. *Pittsburgh S.S.*, 171 F.2d at 179. The court reasoned that, as the employer was the party seeking relief from the decision of the deputy commissioner, and as it was at the employer's request that a trial *de novo* was granted, there was no logical basis for placing the burden of proof upon the parties seeking to defend the challenged decision. *Pittsburgh S.S.*, 171 F.2d at 179; *cf. Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505, 877 N.E.2d 1101, 1113 (2007) ("Under any standard of review, a plaintiff in an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden").

Likewise, in the case at hand, Dunlap is the party seeking relief from the variance granted to the Wehmeiers, and it is at her behest that the instant action was instituted. The fact of *de novo* review does not change the fact that, as the challenger of a legislative enactment, Dunlap bears the burden of showing that it lacks a rational basis. See *Millineum*, 384 Ill. App. 3d at 653, 894 N.E.2d at 860.

### D. Propriety of Summary Judgment

We have concluded that the sole standard to be applied in determining the validity of the variance at issue is the constitutional standard articulated in *La Salle*, namely, whether the challenged variance is "arbitrary, capricious or unrelated to the public health, safety and morals" (*La Salle*, 12 Ill. 2d at 46-47, 145 N.E.2d at 69). Based on the evidence presented before the trial court, the determination of this issue leaves no room for a question of material fact.

■ Although the validity of a zoning ordinance under the *La Salle* standard depends upon the unique facts and circumstances of each case, the *La Salle* court sets out six factors to be considered in determining its validity:

> "(1) The existing uses and zoning of nearby property [citations], (2) the extent to which property values are diminished by the

particular zoning restrictions [citations], (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public [citations], (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner [citations], (5) the suitability of the subject property for the zoned purposes *** [citations], and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property." *La Salle*, 12 Ill. 2d at 46-47, 145 N.E.2d at 69. While *La Salle* involved a challenge to a zoning ordinance rather than a variance, these factors are also relevant in ruling upon the validity of a variance. *Kleidon*, 120 Ill. App. 3d at 1053-54, 458 N.E.2d at 940 (considering the *La Salle* factors in determining the validity of a variance); *Lapp*, 359 Ill. App. 3d at 170, 833 N.E.2d at 998 (same).

■ Under these factors, we cannot say that Dunlap has provided evidence to create a material issue of fact. Regarding the first factor, it is undisputed that nearby property is zoned for single-family residences, exactly the same as the property at issue, which the variance does not change. No evidence was presented to suggest that the variance would effect change in the existing uses of the surrounding property; it is not as if, for instance, a factory were being built next to Dunlap's home. Regarding the second factor, Dunlap provided no competent evidence to show that the Wehmeiers' patio room would cause diminution in value of her property; although her expert, in his deposition, opined that it might, he then admitted that he was not an appraiser of property. The third factor is therefore inapplicable, since Dunlap lacks evidence to show that her property values might be destroyed. Regarding the fourth factor, although Dunlap and her expert both stated that the patio room would be visually intrusive, they did not present evidence to show that this detriment is greater than the gain to the Wehmeiers. Regarding the fifth factor, Dunlap presented no evidence to suggest that the subject property is unsuitable for a patio room; indeed, the expert for the Village testified in his deposition that the patio room at issue is quite standard, and that there are many other such rooms in Village houses. And finally, the sixth factor is inapplicable, as the Wehmeiers' deposition testimony shows that the property at issue has not been vacant. Accordingly, under the evidence presented before the court, Dunlap cannot show that the Village's decision to grant the variance was arbitrary and unreasonable under the factors in *La Salle*, and summary judgment for the Wehmeiers was therefore proper.

Therefore, for the reasons previously stated, we affirm the trial court's grant of summary judgment in favor of the Village and the Wehmeiers.

Affirmed.

CAHILL, P.J., and McBRIDE, J., concur.