# Illinois Official Reports

## Appellate Court

---

### *Avery v. GRI Fox Run, LLC*, 2020 IL App (2d) 190382

---

| | |
|---|---|
| Appellate Court Caption | BRIAN AVERY and CAROLYN AVERY, Plaintiffs-Appellants, v. GRI FOX RUN, LLC, and ROUNDY'S ILLINOIS, LLC, Defendants-Appellees. |
| District & No. | Second District<br>No. 2-19-0382 |
| Filed | April 15, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 18-L-686; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael M. Roth and Ryanne Bush Dent, of Ice Miller LLP, of Lisle, for appellants.<br><br>Jason M. Metnick and Monica J. Paine, of Meltzer, Purtill & Stelle LLC, of Chicago, for appellee GRI Fox Run, LLC.<br><br>Lorne T. Saeks, of Much Shelist, P.C., of Chicago, for other appellee. |

| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Schostok and Brennan concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiffs, Brian and Carolyn Avery, sued defendants, GRI Fox Run, LLC (Fox Run), the owner of a strip mall, and Roundy's Illinois, LLC (Mariano's), the operator of Mariano's Fresh Market grocery store (Mariano's store). Plaintiffs sought (1) to enjoin, via private enforcement (65 ILCS 5/11-13-15 (West 2018)), alleged violations of the City of Naperville's (City) land-use ordinance and (2) damages for alleged noise, light, and air nuisances arising from the operation of the Mariano's store. The trial court granted defendants' motions to dismiss (735 ILCS 5/2-615 (West 2018)) plaintiffs' second amended complaint, with prejudice. Plaintiffs appeal, arguing that the trial court erred in dismissing their complaint and in denying their oral motion to file a third amended complaint. We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3     On June 13, 2018, plaintiffs sued defendants. In July 2018, after the strip mall was sold, plaintiffs moved for leave to file a first amended complaint, to substitute Fox Run (for Bradford Fox Run, LLC) as a defendant. The trial court granted plaintiffs' motion. On November 16, 2018, the trial court dismissed plaintiffs' first amended complaint (see *id.*), without prejudice, finding that the complaint's allegations lacked specificity, were conclusory, and were insufficient for the court to determine if the *Moorman* doctrine would apply (see *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982)).

¶ 4     On January 14, 2019, plaintiffs filed a second amended complaint in which they alleged that they own a home in a residential neighborhood, at 1367 Hunter Circle in Naperville. The home was built in 1991, Brian purchased it in 1994, and Carolyn started living there in 1998. The home has a fenced-in backyard, along with a deck and an in-ground pool.

¶ 5     Fox Run owns two parcels of property at 1212 South Naper Boulevard in Naperville. The Mariano's store occupies and operates on one of the parcels (Mariano's property). The front of the Mariano's property faces west toward Naper Boulevard, with loading docks behind the building on the east side. The rear of the Mariano's property abuts the rear property line of plaintiffs' property.

¶ 6     When plaintiffs moved into their home, the Mariano's property was occupied by a Dominick's grocery store. At the time, the Dominick's property was zoned "R1A Low Density Single-Family Residence District Planned Unit Development." Dominick's, plaintiffs alleged, erected a large fence to shield its residential neighbors from its loading-dock activities. It also maintained large conifer trees that shielded the store's operations from the residential neighborhood behind it. A large grassy retention area also buffered the Dominick's building from part of the residential neighborhood behind it, including plaintiffs' property. The Dominick's loading-dock operations and truck deliveries were distant from plaintiffs' property, and the volume, frequency, time-of day, or duration of noise did not disturb plaintiffs. Nor did they violate the City's zoning regulations. During the years of the Dominick's operations, the exterior lighting did not shine excessive brightness or glare onto plaintiffs'

property. Nor did the noise and odors from the loading-dock operations and truck deliveries interfere with plaintiffs' quiet and peaceful use of their property. In late 2013, Dominick's ceased operations at the Mariano's property.

¶ 7　　In August 2014, Mariano's leased the Mariano's property. In April 2015, the property was rezoned as a "B2 Commercial Shopping Center District." Afterward, the building that Dominick's occupied was demolished, and a new building was constructed to house the Mariano's store. Plaintiffs alleged that the Mariano's building's location was substantially different from the Dominick's store's location. The building and the loading dock were farther east and north, so the building was substantially closer to plaintiffs' property. A section of the retention area was excavated and removed, and the area is now paved and serves as an approach and departure area for Mariano's trucks.

¶ 8　　Plaintiffs further alleged that the truck-delivery approach and departure area is now directly behind their property and that no fencing or other noise barriers shield residential owners, including plaintiffs, directly behind the loading dock area. Further, the large conifer trees that buffered noise, light, and plaintiffs' view of the Dominick's operations were destroyed by defendants' excavation and construction of the Mariano's store. The Mariano's operations, according to plaintiffs, are substantially different from the Dominick's operations in that Mariano's has many more deliveries—including during early-morning hours and late into the night—and the deliveries are closer to plaintiffs' property and much louder. Further, the Mariano's operations, including activities at the loading docks and the approach and departure areas and the resulting traffic, are not shielded. Their impact is perceptible at plaintiffs' property. Other businesses' operations at the strip mall, they noted, have not changed in any perceptible way.

¶ 9　　Plaintiffs alleged that, under the relevant Naperville zoning regulations, noise levels for commercial uses may not exceed 62 decibels during the hours of 7 a.m. to 7 p.m. The regulations also provide that noise levels for commercial uses may not exceed 55 decibels from 7 p.m. to 7 a.m. City of Naperville Municipal Code § 6-14-4 (amended Sept. 6, 2016) (Noise Ordinance).

¶ 10　　According to plaintiffs, the Mariano's operations violate the Noise Ordinance, because the noise generated by trucks at the property is audible at plaintiffs' property line and exceeds allowable limits. Truck traffic at the loading docks directly west of plaintiffs' property has increased greatly due to the number of trucks that make deliveries to the store "at all hours of the day and night." The truck traffic is audible at plaintiffs' property line and has greatly increased since the Dominick's operations. Plaintiffs further alleged that "[t]ests conducted according to the testing methods specified in the Noise Ordinances, using properly calibrated sound level meters, have found that the truck noise from deliveries to the Mariano's significantly exceeds allowable limits."

¶ 11　　Plaintiffs further alleged that the City's measurements testing at the property line determined that truck-delivery noise from the Mariano's operations exceeded the Noise Ordinance's permissible decibel levels on several dates in 2016 and 2017, including May 12, 17, and 23, 2016; June 1, 3, 7, 22, 23, and 27, 2016; July 5 and 6, 2016; August 4, 2016; and January 11 and 18, 2017. The City issued citations for the truck noise, and Mariano's pleaded guilty and paid $1000 in fines for the violations occurring on January 11 and 18, 2017. Plaintiffs asserted that the citations have not deterred Mariano's or changed its truck-delivery practices and conduct and that it continues to violate the Noise Ordinance. The truck noise

continues to exceed the ordinance's limits "virtually every day," including May 7, 8, 15, 21, and 22, 2018; June 2, 2018; and November 19, 2018. During one 24-hour period in the fall of 2018, there were more than 100 ordinance violations in the day and night. According to plaintiffs, they "often" experience noise levels of 100 decibels or more from the truck traffic. Truck-delivery noise, they asserted, violates the Noise Ordinance and is continuous and ongoing.

¶ 12    Plaintiffs asserted that defendants know of the violations but have failed to remedy the issues. In addition to the foregoing violations, plaintiffs alleged that the City had also cited Mariano's on June 17, 22, and 29, 2016, for allowing deliveries prior to 6 a.m. Mariano's paid $250 in fines for each of these violations. On June 23, 2016, a Mariano's representative acknowledged and apologized to a City representative for the Noise Ordinance violations. Further, in 2016, Mariano's representatives corresponded with City representatives concerning noise-abatement methods, including noise-baffling fences; use of electric-powered rather than diesel-powered trailers; and ceasing the use of mobile refrigerated units. Mariano's solicited bids for sound-abatement panels but never installed them or implemented any sound-abatement measures. In 2016, the City notified Mariano's that its business operations were affecting the quality of life of the store's residential neighbors.

¶ 13    On July 19, 2017, Brian wrote to Mariano's counsel about the ordinance violations at the property. After receiving no response, on February 27, 2018, he sent a second letter. Between March and May 2018, Brian and Mariano's counsel exchanged correspondence about the disturbances and the ordinance violations. (In April 2018, Brian wrote to Fox Run and the City.) On May 2, 2018, Brian and counsel for plaintiffs and Mariano's met at the loading docks at the Mariano's property to address the Noise Ordinance violations. Neither Mariano's nor Fox Run took any action to abate the problems.

¶ 14    In count I, directed against Fox Run, plaintiffs alleged violations of the Noise Ordinance and sought an injunction, under section 11-13-15 of the Illinois Municipal Code (65 ILCS 5/11-13-15 (West 2018)), to prevent Fox Run from allowing the use of the Mariano's property in violation of the ordinances (including loading-dock activities and deliveries, which exceed allowable decibel levels) and ordering it to comply with such regulations. They also sought orders directing Fox Run to remove any materials or equipment used in connection with the unlawful business operated on the property and to restore the property to a condition appropriate for lawful uses within the zoning regulations, and they sought attorney fees and costs.

¶ 15    In count II, directed against Mariano's, plaintiffs alleged that the Mariano's operations violate the Noise Ordinance (including loading-dock activities and deliveries, which exceed allowable decibel levels) and directly impact plaintiffs' use and enjoyment of their property, disrupt their peace and quiet, invade their privacy, and cause health issues. They sought an injunction to prevent Mariano's from using the property in violation of the Noise Ordinance and an order directing Mariano's to comply with it. See *id.* They also sought an order directing Mariano's to remove any materials or equipment used in connection with the unlawful business on the property and sought attorney fees and costs.

¶ 16    In count III, directed against Mariano's, plaintiffs alleged a private nuisance. They asserted that violations of the Noise Ordinance by Mariano's constitute substantial and unreasonable invasions of their interest, use, and enjoyment of their property. According to plaintiffs, the noise pollution constitutes a substantial and continuing invasion and interferes with plaintiffs'

- 4 -

interest in the use and enjoyment of their property and makes life uncomfortable for them. Deliveries to the property between 10 p.m. and 6 a.m. create a nuisance "per the City of Naperville citations previously issued to Mariano's." These deliveries, according to plaintiffs, are "frequent," and they started on May 12, 2016, and continue at least weekly, including in 2016 (June 17, June 22, and June 29), 2017 (August 24 and October 2), and 2018 (February 23, May 8, May 15, June 9, and November 19).

¶ 17    Plaintiffs asserted that the air pollution and noxious odor generated by the diesel-truck traffic are perceptible at their property, are unreasonably odorous, and exceed the levels of the American Conference of Governmental Industrial Hygienists (ACGIH). Plaintiffs alleged that the nitrogen dioxide levels are at least 0.36 ppm, which is nearly double the ACGIH standard. Nitrogen dioxide comes from burning fuel, as do the trucks that make deliveries to the Mariano's property. The nitrogen dioxide invading plaintiffs' property is caused by trucks' making deliveries and idling. The odors constitute substantial and continuing invasions of and interferences with plaintiffs' interest in the use and enjoyment of their property, are physically offensive to the senses, unreasonably interfere with plaintiffs' ability to enjoy their property, and make life uncomfortable for them. The air pollution and noxious odors, according to plaintiffs, started on May 12, 2016, and are continuing daily (and are worse during the summer).

¶ 18    Plaintiffs further alleged that Mariano's has been notified and knows of the noise and odor invasions but has not remedied the issues. Further, it owed and owes a duty of care, but it breaches that duty by failing to prevent unreasonable noise and air pollution from invading plaintiffs' property. Mariano's violations of applicable regulations and laws are negligent and/or done with conscious disregard for the damage to plaintiffs.

¶ 19    Plaintiffs alleged that the market value of their property has substantially decreased. They have also suffered inconvenience, health issues, annoyance, discomfort, disruptions to their peace and quiet, invasions of privacy, and the inability to fully use and enjoy their property. They sought damages for (1) the difference in the market value of their property and (2) "the inconvenience[,] health issues, annoyance, discomfort, and the inability to fully use and enjoy" their property. Plaintiffs also sought punitive damages for any willful and wanton acts.

¶ 20    In count IV, brought against Fox Run, plaintiffs again alleged a private nuisance and sought (1) damages for the difference in the market value of their property caused by Fox Run's acts; (2) damages for their inconvenience, health issues, and discomfort; and (3) punitive damages. In this count, plaintiffs alleged that the exterior lights in the strip mall are unreasonably bright, point directly at their property, and are visible there. In early 2017, plaintiffs installed in their rear windows plantation shutters to help block out the illumination from the exterior lights. The light pollution, they alleged, started in the fall of 2016, when the trees that buffered the exterior lights were removed, and it has been continuous and ongoing. The light pollution constitutes a substantial and continuing invasion of and interference with their interest in the use and enjoyment of their property. It physically offends the senses, unreasonably interferes with plaintiffs' ability to enjoy their property, and makes their lives uncomfortable. Further, the ordinance violations by Mariano's, along with the noise and air pollution, are substantial, continuing, and unreasonable invasions of plaintiffs' interest, use, and enjoyment of their property. The noise generated by truck traffic and deliveries to the Mariano's property is audible at plaintiffs' property, is unreasonably loud, and far exceeds the allowable limits in the Noise Ordinance. Deliveries to Mariano's between 10 p.m. and 6 a.m. create a nuisance "per

City of Naperville citations previously issued to Mariano's." The deliveries started on May 12, 2016, and are frequent and continuing at least weekly, including June 17, 22, and 29, 2016; August 24 and October 2, 2017; February 23, 2018; May 8, 15, and 21, 2018; June 9, 2018; and November 19, 2018. The air pollution and noxious odor generated from the diesel-truck traffic and deliveries are perceptible at plaintiffs' property, are unreasonably odorous, and exceed the ACGIH standards. The air pollution and noxious odors started on May 12, 2016, and are continuing daily, and the noise, light, and odor invasions are continuing and ongoing. The Mariano's operations, they asserted, violate the Mariano's lease with Fox Run, and Fox Run has notice of this but refuses to enforce the lease terms. Fox Run is violating the Noise Ordinance, because it is the owner of the property on which the violations are occurring. Fox Run owes a duty to exercise ordinary care, but it has been breaching that duty with its and its tenant's unreasonable invasion of plaintiffs' property with noise, air, and light pollution.

¶ 21    Finally, we note that plaintiffs initially alleged that they brought their suit "to recover direct and consequential property damages." Plaintiffs attached to their complaint copies of the relevant regulations.

¶ 22    On February 13, 2019, Mariano's moved to dismiss plaintiffs' second amended complaint (735 ILCS 5/2-615 (West 2018)), arguing that, like the earlier complaints, the pleading was premised upon conclusory allegations and lacked even minimal facts to support their causes of action. Specifically, as to the ordinance-violation count, Mariano's argued that plaintiffs failed to assert that they complied with the Noise Ordinance's express testing standard but instead alleged vague and general claims that they are being inconvenienced by noise from the Mariano's operations. As to the private-nuisance count, Mariano's argued that the use of the site for a grocery store is reasonable and that the fact that the Mariano's store might be more successful than the Dominick's store is not a basis to assert tort liability when the use was long in place (including when plaintiffs purchased their home) and is appropriate and beneficial to the location and the community. Mariano's also asserted that the nuisance claim was barred by the *Moorman* economic-loss doctrine, because plaintiffs failed to set forth any specific damages to their person or property.

¶ 23    Also on February 13, 2019, Fox Run moved to dismiss (see *id.*) plaintiffs' second amended complaint, arguing that plaintiffs failed to plead sufficient facts showing any Noise Ordinance violation and that the private-nuisance claim was barred by the *Moorman* doctrine because it is a tort claim seeking only economic damages.

¶ 24    On April 12, 2019, the trial court granted defendants' motions to dismiss, with prejudice. The court found that plaintiffs' complaint lacked specificity concerning "the testing that was done, at what time, by whom, and all of the other" Noise Ordinance requirements. As to the private-nuisance count, the court determined that the *Moorman* doctrine barred the claim because plaintiffs seek economic damages. "They may be couched in other terms, but in their essence, the claims are seeking monetary damages only." Plaintiffs' counsel orally moved for leave to amend plaintiffs' complaint, asserting that there were "test results on specific dates for specific times." The trial court denied plaintiffs' oral motion for leave to amend their pleading. Plaintiffs appeal.

¶ 25    II. ANALYSIS

¶ 26    Plaintiffs' second amended complaint was dismissed pursuant to section 2-615 of the Code of Civil Procedure (Code) (*id.*). A section 2-615 motion to dismiss challenges the legal

sufficiency of a complaint, based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). In reviewing the sufficiency of the complaint, we take all well-pleaded facts as true and construe the allegations in the complaint in the light most favorable to the plaintiff. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 61. "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall*, 222 Ill. 2d at 429. We review *de novo* an order granting a section 2-615 motion to dismiss. *Henderson Square*, 2015 IL 118139, ¶ 61.

¶ 27        Illinois is a fact-pleading jurisdiction. *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 451 (2004). Although pleadings are to be liberally construed, with the aim of doing substantial justice between the parties, this rule does not relieve a plaintiff from including sufficient factual averments in his or her complaint. *People ex rel. Kucharski v. Loop Mortgage Co.*, 43 Ill. 2d 150, 152 (1969). While the plaintiff is not required to set forth evidence in his or her complaint, the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action, not simply conclusions. *Marshall*, 222 Ill. 2d at 429. A pleading that merely paraphrases the elements of a cause of action in conclusory terms is insufficient. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1999). A complaint will be deemed sufficient if the allegations contained therein "reasonably inform the defendants by factually setting forth the elements necessary to state a cause of action." *People ex rel. Scott v. College Hills Corp.*, 91 Ill. 2d 138, 145 (1982).

¶ 28                                    A. Noise Ordinance Violations

¶ 29        In counts I and II, plaintiffs alleged that defendants violated, and continue to violate, the Noise Ordinance. The trial court found that plaintiffs' complaint lacked specificity concerning "the testing that was done, at what time, by whom, and all of the other" ordinance requirements. On appeal, plaintiffs argue that the trial court erred in dismissing these counts, because (1) their complaint reasonably informed defendants of their noise-ordinance-violation claims and (2) Illinois law does not require plaintiffs to set forth evidence in their complaint. For the following reasons, we agree with plaintiffs.

¶ 30        Section 11-13-15 of the Illinois Municipal Code provides:

"In case any building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure, including fixtures, or land, is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby, the proper local authorities of the municipality, or any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation." 65 ILCS 5/11-13-15 (West 2018).

¶ 31        The statute "provides a mechanism for property owners to seek redress for ordinance violations on neighboring properties." *Fox Valley Families Against Planned Parenthood v.*

*Planned Parenthood of Illinois*, 2018 IL App (2d) 170137, ¶ 4. Section 11-13-15's purpose "is to afford relief to private landowners in cases where municipal officials are slow or reluctant to act, or where their actions do not protect the landowners' interests." *Dunlap v. Village of Schaumburg*, 394 Ill. App. 3d 629, 638 (2009). Courts may issue restraining orders or preliminary or permanent injunctions. 65 ILCS 5/11-13-15 (West 2018). "An owner or tenant need not prove any specific, special or unique damages to himself [or herself] or his [or her] property or any adverse effect upon his [or her] property from the alleged violation in order to maintain a suit under the foregoing provisions." *Id.*

¶ 32        The Noise Ordinance, as plaintiffs note, provides that commercial noise levels may not exceed 62 decibels from 7 a.m. to 7 p.m. and 55 decibels from 7 p.m. to 7 a.m. It also provides:

> "1. Noise: The decibels generated from a use shall not exceed the exterior noise limitations set forth in table 1 of this Section as measured at the property line of the parcel from which the noise is generated. The decibels typically generated by particular uses are given in table 2 of this Section.
>
>> 1.1. Measurement Of Noise: Noise shall be measured at the property line of the parcel from which the noise is generated. Noise shall be muffled so as not to become violative of applicable standards due to intermittence, beat frequency, shrillness, or intensity. The sound pressure level shall be measured with a sound level meter and an octave band analyzer that conforms to ANSI S1.4-1983 (American [N]ational [S]tandards [I]nstitute) specifications, or any successor standard promulgated by ANSI. Preferred frequencies for acoustical measurements shall be used." City of Naperville Municipal Code § 6-14-4(1), (1.1) (amended Sept. 6, 2016).

¶ 33        The Noise Ordinance lists several exemptions to the foregoing restrictions, including daytime building or construction work and grounds landscape maintenance (excluding golf courses) (allowed between 7 a.m. and 7 p.m.); landscape maintenance by a commercial landscape contractor on property improved with single-family and duplex residential structures (not allowed before 8 a.m. or after 6 p.m. on Saturdays and Sundays); snowplowing; and using emergency generators, warning devices, and emergency equipment/vehicles. *Id.*

¶ 34        Plaintiffs argue that their second amended complaint reasonably informed defendants of their claims for Noise Ordinance violations. They note that, in the trial court, defendants took issue with facts allegedly missing from the complaint, including what noises are being heard, when noises are being heard, what decibel levels are being measured, and what testing method was used to measure decibel levels. Plaintiffs assert that the trial court ignored the numerous factual allegations in the complaint that specified the type of noise and when it was heard, the decibel levels measured, and the testing method utilized. Specifically, they alleged that "noise decibels generated by the trucks at the Mariano's Property are audible at [plaintiffs'] property line," "[m]easurements taken by the City of Naperville at the property line pursuant to the Noise Ordinances determined that the truck delivery noise from [the] Mariano's operations exceeded the permitted decibel level on many dates in 2016 and 2017," and "[s]ince May 12, 2016, [the] Mariano's truck delivery operations have not changed." Plaintiffs also note that they alleged that testing was "conducted according to testing methods specified in the Noise Ordinances." Plaintiffs further point to their allegations that the truck noise "continues to exceed the limits permitted in the Noise Ordinances virtually every day, including, but not limited to, the following dates in 2018: May 7, May 8, May 15, May 21, May 22, June 2 and November 19." They also alleged that truck traffic often caused noise levels of "100 decibels

or more." The foregoing allegations, plaintiffs argue, show that their complaint stated all necessary facts and that defendants have been on notice of these facts for almost two years. Dismissal, they urge, was not proper, because the complaint reasonably informed defendants of plaintiffs' claims under the Illinois Municipal Code, and, they add, gathering of the level of detailed information defendants seek, if relevant, is better suited for discovery.

¶ 35     Defendants respond that the trial court correctly dismissed plaintiffs' claims because the complaint comprised factual conclusions unsupported by allegations of specific facts necessary to recover under the asserted theory. Plaintiffs were required to plead facts establishing that they have been substantially affected by violations of the Noise Ordinance. Alleging past violations or discomfort based upon noises heard (even daily) is not, defendants argue, sufficient to state a claim. The Noise Ordinance standards, they note, provide that noise levels must be measured at the property line; muffled to avoid intermittence, beat frequency, shrillness and intensity; and measured in accordance with ANSI standards. Measurements must also account for the sources of the noises and whether they are allowed to exceed the prohibited limits. Defendants assert that plaintiffs failed to allege specific facts from which to determine whether the Noise Ordinance covered the alleged noises that were tested. The ordinance excepts noise generated by daytime construction operations, landscape maintenance, valves, warning devices, emergency equipment, snowplows, and emergency generators. Without facts, defendants assert, there is no way to determine if plaintiffs are claiming that the unwanted noise is attributable to trucks traveling along the path behind the strip mall or idling at the loading dock (or elsewhere along the path) or to a single truck releasing its air brakes. They also argue that, without identifying when the alleged violations occurred, there is no way to determine if the trucks were delivering to the Mariano's store or another mall tenant or whether the occurrence alleged to have been measured was a single event or involved a delivery outside of the usual course of business.

¶ 36     Defendants further assert that plaintiffs did not allege that they measured sound levels or identified the sound-testing equipment that was used. Even if they did, defendants continue, there is no indication that they measured discrete noise emanating solely from the Mariano's operations. The tests, defendants suggest, might have measured ambient noise from plaintiffs' own home and their neighbors' homes, lawn mowers, car and truck traffic from both their subdivision and the Mariano's property, and the multiple commercial businesses that their home abuts, all of which could produce false readings. Defendants argue that plaintiffs' assertion that they complied with the Noise Ordinance testing methods is misleading because their allegations do not inform defendants whether plaintiffs conducted any testing and the pleadings refer only to prior testing conducted by the City. Further, defendants contend that the complaint contains conclusory statements and legal conclusions. Allegations that the noises are audible at plaintiffs' property and continue to exceed the limits virtually every day and that truck traffic noise often exceeds 100 decibels are conclusory, they maintain, and not sufficient. Further, defendants argue, the allegations are vague, do not reasonably apprise them as to whether any testing was done, and, if it was done, what was tested for and the results obtained. Plaintiffs' allegations that tests were conducted according to the Noise Ordinance testing methods and showed that truck noise from deliveries to the Mariano's store significantly exceeded allowable limits are conclusory because they merely mirror the elements of the measurements of noise specified in the ordinance.

¶ 37 The trial court found that plaintiffs' complaint lacked specificity concerning "the testing that was done, at what time, by whom, and all of the other" ordinance requirements.

> "The law in Illinois with respect to pleading 'ultimate' facts rather than 'conclusions of law' is not clear. The same allegation may in one context be a proper allegation of ultimate fact, while in another context, where from a pragmatic viewpoint some of the words do not give sufficient information to an opponent of the character of evidence to be introduced or of the issues to be tried, the allegation may be deemed to be an allegation of a legal conclusion." *J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 213 Ill. App. 3d 510, 514 (1991).

A section 2-615 motion accepts all well-pleaded facts as true, and a defendant may not contest the factual allegations in the complaint. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 26 (a summary judgment motion is the proper vehicle to address a complaint's factual allegations).

¶ 38 We conclude that the trial court erred in dismissing plaintiffs' Noise Ordinance claims. Consistent with the ordinance's requirements, plaintiffs alleged that their property is within 1200 feet of and abuts the Mariano's property and that the truck-traffic noise from the Mariano's operations is audible at their property line. They also alleged that "[t]ests conducted according to the testing methods specified in the Noise Ordinances, using properly calibrated sound level meters, have found that the truck noise from deliveries to the Mariano's significantly exceeds allowable limits." Aside from the allegations concerning the violations for which Mariano's had already been cited by the City, which are not relevant in assessing whether plaintiffs stated a claim, plaintiffs further alleged that the truck noise continues to exceed allowable limits "virtually every day," including May 7, 8, 15, 21, and 22, 2018; June 2, 2018; and November 19, 2018. They added that during a 24-hour period in the fall of 2018 there were over 100 instances of ordinance violations in the day and night. Plaintiffs also asserted that the violations are continuous and ongoing. We disagree with defendants that the allegations lack specificity in that they do not specify the results of the testing (specifically, by how much the measurements exceeded the ordinance's decibel limits) or the times of day the measurements were taken (which could identify the types of activities that generated the noises). As plaintiffs note, the law does not require plaintiffs to set forth evidence in their complaint. Through discovery, evidence can be sought concerning what testing was done and the measurements taken from plaintiffs' property. Further, defendants can challenge, for example, the validity of the test results, the equipment utilized, and other aspects of plaintiffs' allegations. We disagree with defendants' assertion that plaintiffs merely recited the elements of an ordinance-violation claim. The allegation that "[t]ests conducted according to the testing methods specified in the Noise Ordinances" consists, in our view, of sufficiently specific facts concerning the testing, as does the allegation that the noise from truck deliveries to the Mariano's store significantly exceeds allowable limits. Finally, plaintiffs' allegations specify that truck traffic is the noise source at defendants' property. Thus, contrary to defendants' assertions, plaintiffs need not have pleaded that any ordinance exception does not apply.

¶ 39 In summary, the trial court erred in dismissing plaintiffs' Noise Ordinance-violation claims.

¶ 40                                B. Private Nuisance

¶ 41    Next, plaintiffs argue that the trial court erred in dismissing their private-nuisance claims. They assert that (1) their complaint contained sufficient factual allegations and (2) the *Moorman* doctrine does not bar the claims. For the following reasons, we conclude that plaintiffs cannot seek damages for the decrease in the market value of their home but that the trial court otherwise erred in dismissing the nuisance claims because plaintiffs also sought damages for inconvenience, health issues, annoyance, discomfort, and the inability to fully use and enjoy their property.

¶ 42                             1. Sufficiency of Allegations

¶ 43    Plaintiffs first argue that their complaint contained sufficient factual allegations of a private nuisance. The trial court did not address this issue. We conclude that there were sufficient factual allegations and that the claims should not have been dismissed on this basis.

¶ 44    A private nuisance is an invasion of another's interest in the use and enjoyment of his or her land and must be substantial, either intentional or negligent, and unreasonable. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 204 (1997). Whether particular conduct constitutes a nuisance is determined by the conduct's effect on a reasonable person. *Id.* Unlike a trespass, a nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with the possession. *Id.* (citing Restatement (Second) of Torts § 821D cmt. d, at 101 (1979)). Nevertheless, "the interference with the use and enjoyment of property must consist of an invasion by something perceptible to the senses," " 'something that is offensive, physically, to the senses and by such offensiveness makes life uncomfortable.' " *Id.* at 205 (quoting *Rosehill Cemetery Co. v. City of Chicago*, 352 Ill. 11, 30 (1933)). Common examples of a private nuisance are smoke, fumes, dust, vibration, or noise produced by the defendant on its own land and impairing the use and enjoyment of the neighboring land. *Id.* at 205-06. Private nuisance is a tort. *Id.* at 206. "In an action to enjoin a private nuisance, the circuit court must balance the harm done to the plaintiffs against the benefit caused by the defendant's use of the land and the suitability of the use in that particular location." *Dobbs v. Wiggins*, 401 Ill. App. 3d 367, 376 (2010). Whether a complained-of activity constitutes a nuisance is generally a factual question. See, *e.g.*, *Schweihs v. Chase Home Finance, LLC*, 2015 IL App (1st) 140683, ¶ 40.

¶ 45    Plaintiffs maintain that they sufficiently alleged claims for a private nuisance because their complaint contained allegations concerning the noise and air pollution emanating from the Mariano's property. They alleged that the noise pollution is perceptible at their property, unreasonably interferes with their ability to enjoy their property, and makes life uncomfortable for them. They also alleged various injuries, including health issues, annoyance, discomfort, disruption, invasions of privacy, and the inability to fully use and enjoy their property. Plaintiffs further alleged that defendants have knowledge of their violations and continue to knowingly violate the Noise Ordinance. The Mariano's operations, they asserted, are substantially different from the Dominick's operations and involve more deliveries, deliveries early in the morning and late at night, and deliveries much closer to plaintiffs' property (and much louder for them). Mariano's, they asserted, revamped its leased premises, moved the loading docks closer to plaintiffs' property line, and substantially changed the business operations at the site. Plaintiffs also point out that their allegations of air and noxious-odor pollution were similarly specific and included that the air pollution is unreasonably odorous

and nearly double the ACGIH standard and that light pollution generated by the exterior lights is visible at their property and is unreasonably bright. Finally, they argue that they did not move to the nuisance but that they suffer due to Mariano's conduct. They maintain that the Mariano's store's success has nothing to do with this case; rather, Mariano's cannot operate without regard for the harm it is causing its neighbors.

¶ 46 Defendants respond that plaintiffs failed to allege well-pleaded facts to state claims for a private nuisance. They assert that the complaint contains conclusory, unsupported, and unspecified facts and merely paraphrases elements of a private-nuisance action. Defendants contend that the complaint does not provide specific facts concerning what portion of the property cannot be used due to the alleged nuisance; how plaintiffs cannot use or enjoy their property due to the alleged noise, light, or odor; how life is uncomfortable due to the alleged nuisance; or what inconveniences, health issues, and discomforts plaintiffs have suffered. Further, defendants argue that the complaint is so vague and conclusory as to the alleged nuisance that it is impossible to determine whether the conduct is unreasonable.

¶ 47 Finally, defendants maintain that plaintiffs came to the nuisance and that, when plaintiffs purchased their home, they knew it was directly behind a commercial strip mall with an existing grocery store that, they note, was planned for future commercial development. The property is being operated as a grocery store, and plaintiffs have not contested or alleged that the operation is not suitable for the locality. See, *e.g.*, *Arbor Theatre Corp. v. Campbell Soup Co.*, 11 Ill. App. 3d 89, 92 (1973) ("[t]he occasional odors and any discomfort resulting from the [pre-existing] compost operation on [the] defendant's mushroom farm were obviously not 'wantonly caused from malice or wickedness,' but from [the] defendant's pursuit of a useful occupation" (quoting 3 Thomas M. Cooley, A Treatise on the Law of Torts, or The Wrongs Which Arise Independently of Contract, at 163 (4th ed. 1932)); affirming finding, following trial, that composting operation was suitable for the locality and reasonable). Defendants also assert that plaintiffs cannot reasonably complain that defendants' operations are a nuisance because they have more frequent deliveries than the prior tenant. Such alleged inconvenience, they urge, must be accepted in an industrialized society.

¶ 48 We agree with plaintiffs that they sufficiently pleaded their private-nuisance counts. Their complaint contained sufficiently specific factual allegations that defendants' activities invaded plaintiffs' interest in the use and enjoyment of their property and that the invasion was unreasonable. They alleged that the noise pollution from the truck deliveries at the Mariano's store is perceptible at their property, unreasonably interferes with their ability to enjoy their property, and makes life uncomfortable for them, because it is unreasonably loud and exceeds the Noise Ordinance's allowable limits. Plaintiffs asserted that there are overnight deliveries to the Mariano's store, which constitute a nuisance pursuant to previously issued citations by the City. They alleged that the deliveries are frequent, and they specified six dates in 2018 on which late-night or early-morning deliveries occurred. Plaintiffs also specified injuries such as health issues, annoyance, discomfort, disruption, invasions of privacy, and the inability to fully use and enjoy their property, and they alleged that the market value of their property has decreased substantially.

¶ 49 Plaintiffs' complaint included similar allegations concerning the air, odor, and light pollution from defendants' property and operations. They alleged that air and noxious-odor pollution is unreasonably odorous and exceeds the ACGIH levels; they specified that the nitrogen dioxide levels (from the burning of fuel, including by the trucks delivering to and

idling at the Mariano's store) are at least 0.36 ppm, which is nearly double the ACGIH standard. The light pollution from the mall's exterior lighting began when trees that buffered the lights were removed in the fall of 2016. The light pollution illuminates their property, is visible at their property, is unreasonably bright, and is continuous and ongoing. Plaintiffs further asserted that, in early 2017, they installed plantation shutters on their home's rear windows to help block out illumination from the exterior lights.

¶ 50     We disagree with defendants' assertion that plaintiffs' claims should be barred because plaintiffs came to the nuisance in that, when plaintiffs purchased their home, they knew that their property was directly behind a commercial strip mall with an existing grocery store that was planned for future commercial development. Even if this characterization is accurate, it does not, in itself, bar plaintiffs' nuisance counts. See *Toftoy v. Rosenwinkel*, 2012 IL 113569, ¶¶ 18-21 ("[a]t common law, a plaintiff who came to the nuisance would not be barred from pursuing a nuisance action, but the fact that the land was acquired or improved after the nuisance[-]generating activity began would be a factor in determining whether the nuisance was actionable"); see also Restatement (Second) of Torts § 840D cmt. b (1979) ("[t]he rule generally accepted by the courts is that in itself and without other factors, the 'coming to the nuisance' will not bar the plaintiff's recovery").

¶ 51                                                                    2. *Moorman*

¶ 52     Next, plaintiffs argue that the trial court erred in determining that the *Moorman* doctrine barred their private-nuisance claims. The *Moorman* economic-loss doctrine may be asserted in the context of a section 2-615 motion to dismiss. See *In re Chicago Flood Litigation*, 176 Ill. 2d at 202-03.

¶ 53     Initially, we review the character of the damages plaintiffs seek. Illinois law distinguishes between two types of damages for a private nuisance: damages caused by permanent nuisances and those caused by temporary nuisances. *Tamalunis v. City of Georgetown*, 185 Ill. App. 3d 173, 183 (1989).

> "A permanent nuisance is one characterized as continuing indefinitely and the structure constituting the nuisance is a lawful one, or one which the person or entity has a legal right to maintain. *** A temporary nuisance is one which is occasional, intermittent, or recurrent and is remediable, removable or abatable. [Citation.] In addition, a nuisance which is caused by the negligent construction of a legal enterprise or the negligent manner of its operation is generally considered temporary." *Id.* at 183-84, 186 (discharge of untreated raw sewage in violation of administrative regulation is a temporary nuisance).

"The measure of damages for a permanent nuisance is the depreciation in the market value of the property injured." *Id.* at 184. "Generally, the measure of damages for a temporary nuisance is the personal inconvenience, annoyance, and discomfort suffered on account of the nuisance." *Id.* Plaintiffs' allegations in this case are centered on an alleged temporary nuisance—the alleged negligent operation of a legal enterprise, a grocery store, where the nuisance is abatable. At oral argument, plaintiffs asserted that the nuisance is both permanent *and* temporary. Counsel argued that the continuous and ongoing nature of defendants' alleged violations reflects the permanent nature of the nuisance. We disagree. Plaintiffs' complaint itself contains examples of measures that were in place—for example, when the Dominick's store was in operation—that abated certain nuisances on the property, including a fence and

trees. The alleged nuisance here is clearly temporary. Thus, because they allege a temporary nuisance, plaintiffs may properly seek recovery only for "personal inconvenience, annoyance, and discomfort suffered on account of the nuisance." *Id.*

¶ 54 Here, the trial court determined that the *Moorman* doctrine barred plaintiffs' private-nuisance claims because plaintiffs sought economic damages. "They may be couched in other terms, but in their essence, the claims are seeking monetary damages only."

¶ 55 "At common law, purely economic losses are generally not recoverable in tort actions." *Fireman's Fund Insurance Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160, 163 (1997). In *Moorman*, 91 Ill. 2d at 91, the supreme court, adopting the majority view, announced the economic-loss rule/doctrine that a products-liability "plaintiff cannot recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation."[1] "The *Moorman* doctrine is intended to preserve the distinction between tort and contract." *Sienna Court Condominium Ass'n v. Champion Aluminum Corp.*, 2018 IL 122022, ¶ 21. The *Moorman* court described economic loss as "damages for inadequate value, costs of repair and replacement, or consequential loss of profits—without any claim of personal injury or damage to other property." (Internal quotation marks omitted.) *Moorman*, 91 Ill. 2d at 82. The doctrine also applies to contracts for services. *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146, 153 (1986) (plaintiff seeking to recover solely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover in contract).

¶ 56 Outside of the contract and products-liability areas, and as relevant here, the supreme court has held that the *Moorman* doctrine applies to nuisance claims. *In re Chicago Flood Litigation*, 176 Ill. 2d at 206-07 (rejecting appellate court's holding that *Moorman* would gut nuisance claims, most of which do not involve property damage and are based on " 'non-physical force[s] such as noise, odor, smoke, dust, or even flies' "). The court noted that a private-nuisance plaintiff "may recover all consequential damages flowing from the injury to the use and enjoyment of his or her person or property. [Citation.] However, recovery of damages for solely economic loss is not permissible." *Id.* at 207. Thus, private-nuisance claims are not treated differently from other torts for purposes of the *Moorman* doctrine. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 424 (2004) (citing *In re Chicago Flood Litigation*, 176 Ill. 2d at 207). The rationale for this holding, the supreme court explained, was that, "because 'the economic consequences of any single accident are virtually endless,' " a defendant could "face virtually uninsurable risks, far out of proportion to its culpability. The economic loss rule operates to prevent such open-ended tort liability." *Id.* at 418 (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d at 207).

---

[1]There are three exceptions to the economic-loss rule: (1) where the plaintiff sustained personal injury or property damage resulting from a tortious event, *i.e.*, a sudden or dangerous occurrence, (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud, and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. *Fireman's Fund Insurance Co.*, 176 Ill. 2d at 165. "In each of these three situations, the plaintiff may recover in tort against the defendant." *Id.* None of the exceptions apply in this case.

¶ 57          *In re Chicago Flood Litigation* illustrates how the *Moorman* doctrine applies in the negligence context and to nuisance actions. In *In re Chicago Flood Litigation*, the plaintiffs consisted of two groups of individuals and businesses who were affected by the flooding of a tunnel beneath the Chicago River, allegedly caused by the city's and its contractor's negligence. The named plaintiffs consisted of a class that claimed property damage and economic loss, including lost revenues, sales, profits, good will, wages, tips, commissions, inventory, and expenses incurred in obtaining alternate lodging. The nonclass plaintiff, Hartford, the subrogee of several additional claimants, brought a nuisance action. The trial court granted in part and denied in part the defendants' motions to dismiss (735 ILCS 5/2-615, 2-619 (West 1994)) and certified questions for interlocutory review (Ill. S. Ct. R. 308 (eff. Feb. 1, 1994)). First, the supreme court held that the *Moorman* doctrine barred recovery for the class plaintiffs who alleged no physical property damage or personal injury but only economic losses. *In re Chicago Flood Litigation*, 176 Ill. 2d at 198-201 (further noting that, for damages to be recoverable in tort, the dangerous occurrence must result in personal injury or property damage; "[a]bsent injury to a plaintiff's person or property, a claim presents an economic loss not recoverable in tort"). Second, the court held that the *Moorman* doctrine does not bar recovery in tort for the class plaintiffs who lost perishable inventory as a result of interrupted electrical service. *Id.* at 201-02. Third, the supreme court addressed the plaintiffs who alleged that they had incurred " 'unspecified' " property damage, and it held that conclusory allegations of unspecified property damage were insufficient to establish a right to recovery in tort and were properly dismissed under section 2-615 of the Code. *Id.* at 202 ("[c]lass plaintiffs must plead facts identifying the type of property damage that they incurred").

¶ 58          Fourth, the supreme court addressed, in two parts, Hartford's nuisance claim. First, the court turned to Hartford's allegation that its subrogors were evacuated from their businesses and that the *evacuations* were unreasonable and substantial invasions of their property. The court rejected this argument and held that, as to the plaintiffs who did not suffer a physical invasion of their property by the flood waters, the complaint failed to state a nuisance claim. *Id.* at 206. The court noted that Hartford had *not* alleged that the businesses whose property had not been invaded by the flood waters "suffered any other type of invasion of the use and enjoyment of their property" (they were merely evacuated from their businesses; there were "no allegation[s] of noxious fumes or disagreeable odors, *** disagreeable noises, or any other type of invasion"), and, in the absence of "any perceptible element that would influence the physical senses" to make their businesses less desirable, the complaint failed to state a cause of action for nuisance. *Id.* Second, as to the nuisance plaintiffs who did not incur any property damage or injuries to their persons but incurred only economic losses, the court held that the *Moorman* doctrine barred their claims. *Id.* at 207. The nuisance tort is not treated differently from any other tort, the court noted. *Id.* "A plaintiff in a private nuisance action may recover all consequential damages flowing from the injury to the use and enjoyment of his or her person or property." *Id.* However, recovery is barred for solely economic damages. *Id.*

¶ 59          Here, plaintiffs argue that, *unlike* the Hartford plaintiffs, they asserted specific invasions of noise, odor, and light onto their property that are perceptible to the senses. Accordingly, they argue, the *Moorman* doctrine does not bar their nuisance claims. They further note that they are not complaining about the failure of their home to serve its purpose or their disappointed commercial expectations regarding the home's quality. Rather, they assert that they have alleged consequential damages flowing from the injury to the use and enjoyment of

- 15 -

their property, due to the direct invasions of noise, odor, and light. Plaintiffs assert that they also alleged health issues and invasions of their privacy arising from the noise, odor, and light pollution, which all fall outside *Moorman*. They maintain that their property has become a repository for defendants' noise, odor, and light, which damage their property and are a consequence of defendants' tort.

¶ 60    Defendants respond that the *Moorman* doctrine bars plaintiffs' nuisance claims, because they cannot recover for their property's decreased market value. Further, as to plaintiffs' prayer for damages for inconvenience, health issues, annoyance, and discomfort, defendants maintain that their allegations fail to meet minimal pleading requirements. Their allegations of injury, according to defendants, are conclusory. Defendants specifically note that plaintiffs failed to specify what health issues they have suffered and whether the pollution was the cause of the alleged health issues. Thus, defendants contend, the allegations do not inform them of the nature of the injury being claimed and thus must be disregarded. Further, defendants assert that plaintiffs did not plead and did not experience physical injury or injury to their property; their losses are purely economic.

¶ 61    In their second amended complaint, plaintiffs alleged that the market value of their property has substantially decreased and that they have suffered inconvenience, (unspecified) health issues, annoyance, discomfort, disruptions in their peace and quiet, invasions of privacy, and the inability to fully use and enjoy their property. They sought damages for (1) the difference in the market value of their property and (2) "the inconvenience, health issues, annoyance, discomfort, and the inability to fully use and enjoy" their property.

¶ 62    First, turning to plaintiffs' prayer for the difference in the market value of their property since the nuisance commenced, we conclude that plaintiffs cannot seek such damages in a temporary-nuisance case and that, even if they could, the remedy they seek constitutes an economic loss, recovery of which is barred by the *Moorman* doctrine. *Id.* at 198-201 (for damages to be recoverable in tort, the dangerous occurrence must result in personal injury or property damage). Plaintiffs have failed to allege any facts as to any injury to their property other than diminution in market value, which is, again, an economic loss. Plaintiffs' reliance on *Statler v. Catalano*, 167 Ill. App. 3d 397 (1988), is misplaced. In that case, the court noted that the elements of damage that can be considered in a private-nuisance case include the difference in value in the property before and after the harm, the loss of use of the property, and the discomfort and annoyance to the party who is harmed. *Id.* at 404 (citing Restatement (Second) of Torts § 929, at 544 (1979)). Because "the element of damage to be considered" depends on whether the nuisance is temporary or permanent, the *Statler* court determined that the nuisance was temporary and that the damages instruction that was given properly stated that the jury had to consider the deprivation of the plaintiffs' use and enjoyment of their home. *Id.* at 405.

¶ 63    In their reply brief, plaintiffs argue, without citation of any authority, that, if there is an invasion sufficient to establish a nuisance, the invasion spills onto the property and damages it and such damages are not economic losses. They maintain that the damages they have suffered are consequences of defendants' tort and that their property has become the repository for defendants' noise, odor, and light, which damage their property. We disagree that they may properly seek damages for the diminution in the value of their property. Again, *In re Chicago Flood Litigation* controls. Addressing the Hartford plaintiffs' nuisance claims, specifically, the plaintiffs who did not incur any personal or property damage but incurred only economic

losses, the supreme court rejected the appellate court's conclusion that the *Moorman* doctrine does not apply to nuisance claims, and it held that recovery of damages for solely economic loss in a private-nuisance action is not permissible. *In re Chicago Flood Litigation*, 176 Ill. 2d at 206-07. Here, plaintiffs suffered no physical damage to their property. Their prayer for damages for the diminution in the market value of their home seeks recovery for an economic loss, not property damage. *Moorman* bars recovery.

¶ 64 Second, we turn to plaintiffs' prayer for damages for "the inconvenience, health issues, annoyance, discomfort, and the inability to fully use and enjoy" their property. We agree with plaintiffs that the *Moorman* doctrine does not bar such damages. The nature of each of these alleged injuries is that they affect one's mental and/or physical health. They certainly cannot be characterized as economic losses or injuries. See *Moorman*, 91 Ill. 2d at 82 (describing economic loss as "damages for inadequate value, costs of repair and replacement, or consequential loss of profits—without any claim of personal injury or damage to other property" (internal quotation marks omitted)). Furthermore, defendants do not even argue that these damages are economic losses but, rather, contend that plaintiffs failed to sufficiently *plead* them. However, they cite no relevant authority for this argument. Instead, they cite the supreme court's statement in *In re Chicago Flood Litigation* that unspecified property damages do not withstand a motion to dismiss. *In re Chicago Flood Litigation*, 176 Ill. 2d at 202-03 (conclusory allegations of unspecified property damage were insufficient to establish a right to recovery in tort and were properly dismissed under section 2-615 of the Code). The supreme court's holding upon which they rely concerns *property* damage, whereas, here, plaintiffs are claiming a form of *personal* injury. Defendants' arguments are unavailing.

¶ 65 In summary, the trial court erred in dismissing plaintiffs' private-nuisance claims. Because we reverse the trial court's dismissal of plaintiffs' second amended complaint, we need not reach plaintiffs' final argument that the court erred in denying their oral motion for leave to file a third amended complaint.

¶ 66 III. CONCLUSION

¶ 67 For the reasons stated, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

¶ 68 Reversed and remanded.